[No. 7297.]

### VAN GORDOR v. VAN GORDOR.

ALIMONY—*Amount—Discretion of the Court*—Where a divorce is granted to the wife the amount of alimony to be awarded is in the sound discretion of the trial court. Its award will not be disturbed unless a clear abuse of the discretion is shown. An allowance to the wife, no longer able to perform hard labor, of a sum not exceeding one-half the net value of the husband's estate, acquired by their joint labors and economy, was held not only a proper, but a wise exercise of the discretion.

*Appeal from Weld District Court.*—Hon. JAMES E. GARRIGUES, Judge.

Mr. H. E. CHURCHILL, for appellant.

Mr. JOSEPH C. EWING, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Plaintiff, appellee here, commenced this suit against defendant, appellant here, in the district court of Weld county, for divorce and alimony, basing her right of action on three grounds: First. That the defendant had been guilty of

habitual drunkenness for the space of one year or more; Second. That he had been guilty of extreme and repeated acts of cruelty toward the plaintiff; and Third. That he had been guilty of adultery. The case was tried to the court without a jury, and defendant was found guilty of extreme and repeated acts of cruelty toward the plaintiff, and of adultery. A decree of divorce was awarded and plaintiff given a judgment for $8,000, as permanent alimony, also $100 for attorney fees in addition to $100 already allowed for that purpose. The judgment was made a lien against the real estate of the defendant, until within a time limit he should give a legal and sufficient bond on appeal to the supreme court, in the sum of $12,000, which bond was duly filed and approved.

From the judgment of the court awarding alimony the defendant brings the case here upon the ground that such award is excessive, contrary to law and not supported by the evidence. The evidence taken as a whole shows that the value of the defendant's property, at the time of the judgment, varied, in round numbers, from $20,000 to $24,000, according to the testimony of the defendant and his witnesses, and from $37,000 to $43,000, upon the testimony of the plaintiff and her witnesses; that the property consisted of an one hundred and sixty acre ranch with water rights, growing crops, ordinary farm machinery, livestock, work horses and the like. The evidence showed that the defendant was indebted in the sum of $9,000. If the testimony of the plaintiff be taken, the net value of the defendant's assets would be $35,300, one-half of which would be $17,650. According to the testimony of the witness Holland, sworn in behalf of plaintiff, the net value of the defendant's assets was $30,000, one-half of which would be $15,000. According to the estimate of the witness Farr, called by the defendant, the net value of the latter's estate was $14,700, one-half of which would be $7,350.

It is well established that the amount of alimony to be awarded in divorce proceedings is in the sound discretion of

the trial court, and an appellate tribunal will not review that decision unless a clear abuse of such discretion has been shown.—*Boggs v. Boggs,* 45 Ind. App. 397; *Gussman v. Gussman,* 140 Ind. 433; and *Read v. Read,* 28 Utah 297. The rule is stated by Justice McCarty, in the case of *Read v. Read, supra,* as follows:

"The awarding of alimony and fixing the amount thereof are questions, the determination of which rests within the sound discretion of the trial court; and, unless it is made to appear that there has been an abuse of discretion on the part of the court in dealing with one or both of these questions, its judgments and orders granting or fixing the alimony will not be disturbed."

We have carefully examined all of the evidence, and reach the confident conclusion that it amply supports the award. From the testimony of the defendant, which in the very nature of things is quite as favorable to himself as it could be made, it appears that the net value of his estate was $14,700, one-half of which would be $7,350, only $650 less than the alimony actually decreed. Under the well established rule that appellate tribunals will not disturb judgments based on conflicting testimony, where there is sufficient in the record to support it, the award of alimony here should stand, as the discretion of the trial court seems to have been not only properly, but wisely exercised.

Upon the law of the case, natural justice requires that at least one-half of the property, representing the joint accumulations of husband and wife for a lifetime, should go to the wife, where she obtains a decree of divorce through the fault of the husband. Where, as in this case, the husband and wife have lived together until she is unable to perform hard labor, and have, by their joint labor, management and economy, acquired property sufficient to support them both comfortably when living together, certainly when the wife is forced by the misconduct of the husband to seek separation, she ought to receive sufficient property to support her comfortably, living

alone, without reference to her ability to work and contribute to her own support.—*Gercke v. Gercke,* 100 Mo. 237; *Ressor v. Ressor,* 82 Ill. 442.

In many respects the case of *Gercke v. Gercke, supra,* is like the one at bar. There plaintiff and defendant had been married thirty-three years, and by industry and economy had accumulated an estate worth about $12,000. Plaintiff, who was fifty-seven years old and in poor health, had always been a faithful wife; defendant had treated her with great brutality and had been guilty of adultery. He was fifty-four years old, in robust health, and making money in his business. The wife had no means of support, and from her age and health was unable to earn anything. The trial court made an allowance of $6,000 alimony, which was sustained by the supreme court of Missouri. In the opinion of the court Justice Brace makes the following comment:

"That decree gives the plaintiff a moiety of the defendant's fortune. Is it under the circumstances too much? As before intimated, this fortune represents the joint labor, thrift and economy of thirty-three years of the married life of the plaintiff and defendant. The one equally with the other is the meritorious cause of its existence; by hard work faithfully performed by each, within their respective spheres, it was saved and laid by, from the rewards of their daily labor. They should have gone down to their graves in its mutual enjoyment; that they have not done so, is not the fault of the plaintiff; without fault upon her part, she has by the brutal and unfaithful conduct of her husband been deprived of the fruits of her toil and thrown upon the world with nothing but a little household furniture, the value of which is not worth estimating. Her age and the condition of her health is such that she can by her labor do but little towards making a support, and reduces to an inappreciable amount the suggested value of her inchoate right of dower when considered in connection with the age and health of the defendant. The husband is in possession of all the fruits of their joint labor; he has it in-

vested in real estate and in a profitable and thriving business; he is in the enjoyment of vigorous and robust health, and "making bushels of money," as he expresses it. Under these circumstances it did not seem to the chancellor that it was anything but fair and just that the innocent, injured, and comparatively helpless wife should have a moiety of this estate, and now after the lapse of more than two years, during which time the defendant has refused to pay the moderate alimony *pendente lite* his appeal to this court, allowed her by the trial judge, or to contribute anything to her support, but has put her to the expense and delay of prosecuting two actions through the appellate court in order to get anything, we do not feel disposed to disturb his judgment."

It appears in the case of *Ressor v. Ressor, supra,* that the appellant was a capable, industrious woman, attending to her family, her house, cooking and working on the farm, doing a man's work besides, and had been a good manager; that the parties were married and had lived together for thirty-seven years, and she was fifty-nine years old at the time of the hearing; that when they were married neither had any property; and that through their joint efforts they had accumulated a comfortable fortune. It was vigorously contended by the husband, on appeal, in that case, that the wife should be limited to one-third of the income from his property. The facts there, and the contention of the attorney for the husband as to the amount of alimony, are substantially as here. There the court, among other things, at page 445, said:

"She in every way contributed equally to its (farm) improvement, and is fully entitled in equity, and the broadest principles of justice, in her declining years, to a comfortable support from it. She should not be put off with what will barely prolong her existence.

"It appears that she was fifty-nine years old at the time of the hearing, and was not in her former vigorous and robust health. She has probably passed the period when she will be able to perform much more physical labor. The infirmities

of age must soon, according to the course of nature, render her at least comparatively helpless, and she must look to other sources than her own efforts for support. As we have seen, she has earned and is entitled to a comfortable support out of the joint accumulations of herself and her husband.

"In consideration of all the evidence, we regard the amount fixed by the court as being too small. Her board, we presume, would cost her two-thirds of the amount, and the remainder would seem to be a scant allowance to purchase and make her clothing, pay doctor's bills, and other contingent expenses. At her age, her ability to work should not be taken into account, as the infirmities of age may and soon will prevent that, and even if it were not so, she, after her life of hard and incessant toil to accumulate this property, has the right to spend her declining years in ease and comfort, freed from toil and effort. This she has earned, and is entitled to it.
*********

If so, one-third of the sum would be $500 per annum. But the court is not limited to a third of its income. This amount would not be unfair, unjust or unreasonable, even if it should require a sale of a portion of this property. Natural justice would say, that if she contributed equally to its acquisition, she has an equal right to its enjoyment. Independent of conventional law or usage, such would be the decision."

The foregoing cases deal with facts quite similar to those in the case at bar. Plaintiff and defendant started life as man and wife, practically without a cent. Their married life covered a period of thirty-one years; they reared a family of three children. Even after marriage, the wife worked in a hotel for $1.50 a week. They then settled on a homestead, and she taught school four miles from home for $50.00 a month, and boarded herself in order to pay the homestead fees. She walked the eight miles, to and from school. Later she went to cook and work out on a ranch, and stayed there for two years, until within one month before her first child

was born. As soon as the baby was ten or eleven months old, she went back to the ranch to work, and cooked there for four years, all of her earnings going into the common fund. She assisted her husband on the farm, planting and harvesting crops, raising chickens, making butter and milking cows. One winter she fed the stock, while her husband worked away from home, and sold butter and eggs enough at the same time to support herself and the baby in his absence. After living in Kansas nine or ten years, they rented farms in Colorado for some time, and the first two or three years the wife worked in the field, the same as her husband. Everything that she acquired from the sale of butter, eggs, chickens and the like was turned into the family fund. She continued thus to perform labor, working and contributing to this fund for the period of twenty-seven years, until all of the property acquired and now held by the defendant was practically paid for. It is distinctively a common property, the joint product of the two. They then moved to the city of Greeley, in order to have educational advantages for their children. It was about this time that their troubles began, which finally led to this action. The defendant himself, in his testimony, bears witness to the devotion and fidelity of this faithful and patiently industrious wife in the accumulation of the family fortune, in this picturesque and convincing language: "My wife helped to accumulate this property, the water rights and the farm, and helped all along ever since we were married, about thirty-one years. I think she did her full share. Worked out and taught school when we were first married, milked cows and slopped hogs, and worked in the field. She cooked for hired men." It would be difficult to imagine a state of facts more emphatically calling for an application of the rule stated in and illustrated by the cases of *Gercke v. Gercke* and *Ressor v. Ressor, supra.* Under the circumstances disclosed by this record, it seems clear, as matter of law and upon the broadest principles of justice, that this woman is entitled to the full sum awarded, which, under all of the evidence, may

be said to represent less than one-half of the net worth of the property, in the accumulation of which plaintiff has borne so conspicuous and helpful a part. Even had a larger sum been allowed her, it could have been, upon the entire record, fairly and justly upheld.

The judgment is affirmed.

Mr. Justice Musser and Mr. Justice Gabbert concur.