## No. 11,483.

### ROARK *v.* THE PEOPLE.

Decided March 15, 1926.

Plaintiff in error was convicted of possession of a still for the manufacture of intoxicating liquor.

*Affirmed.*

### On Application for Supersedeas.

1. CONSTITUTIONAL LAW—*Intoxicating Liquor—Still.* Chapter 80, S. L. '25, concerning possession of stills for the manufacture of intoxicating liquor, is not in violation of section 21, article 5, or section 25, article 2 of the Constitution.

2. *Legislation—Title.* If an act treats of but one general subject, and that subject is expressed in the title, the requirement of section 21, article 5, of the Constitution is met. Particularity is not essential and generality is commendable in the title.

3. CRIMINAL LAW—*Accessory—Instruction.* In a prosecution for violating the intoxicating liquor laws, an instruction concerning accessories approved, and held warranted by the evidence.

4.  WORDS AND PHRASES—*"Accessory"* and *"Agent"* are not synonymous terms.

5.  CRIMINAL LAW — *Information — Duplicity.* A criminal information charging defendant in one count with possessing and operating a still in his own behalf and as agent, is not bad because of duplicity.

6.  *Sufficiency of Evidence.* Verdict finding defendant guilty of possessing and operating a still, held sufficiently supported by the evidence.

7.  *Sentence—Concurrent.* Where a defendant was convicted and sentenced to not less than 3½ nor more than 5 years on the first count of an information, and to not less than 3 nor more than 4 years on a second count, the sentences to run concurrently, the conviction on the first count being good, a consideration of alleged errors under the second count held unnecessary.

8.  EVIDENCE—*Admissibility.* If evidence is not admissible for the purpose announced at the time of the offer, it is properly excluded.

9.  APPEAL AND ERROR—*Fact Findings.* Findings of fact by a jury will not be disturbed on review.

*Error to the District Court of Garfield County, Hon. John T. Shumate, Judge.*

Mr. JOHN L. NOONAN, Mr. W. F. NOONAN, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of owning, possessing and operating a still for the manufacture of intoxicating liquor, and sentenced to the penitentiary. To review that judgment he brings error, and the cause is now before us on his application for a supersedeas. His principal con-

tentions, and the only ones requiring consideration, are:
(1) Chapter 80, Laws 1925, under which the informa-
tion was filed, is unconstitutional; (2) the court errone-
ously instructed the jury on the subject of an accessory;
(3) defendant could lawfully have been convicted on one
count of the information only, whereas he was con-
victed on both; (4) a certain offer of testimony was er-
roneously rejected; (5) the verdicts are unsupported by
the evidence.

In a remote section of Garfield county, in a timbered
cave in the high, perpendicular banks of Nuckles Creek,
the sheriff of that county discovered a still, several fifty
gallon barrels, some of them filled with mash, some
yeast, some corn meal, three sacks of sugar, six gallons
of whiskey, and a smouldering fire. He established a
watch there for the owners. Recalled temporarily to
the county seat he returned to find the still had been in
operation during his absence and the whiskey was gone.
Tracks revealed that the visitors to the place had ar-
rived and departed on horseback. Having seen defend-
ant in the neighborhood the sheriff feigned departure,
concealed his automobile, and returning with a com-
panion resumed his vigil. Thereupon defendant, a
ranchman of that section, one Caywood, his foreman,
and two others, arrived on horseback. Caywood car-
ried out a sack of sugar and put it on his horse and
defendant was carrying out the still when the sheriff
emerged from his concealment and took charge. In the
conversation that ensued, defendant said he was getting
rid of the outfit for a friend, and Caywood, who carried
field glasses, said to the sheriff, in the presence of de-
fendant, "You sure slipped one over on us that time.
We had been watching that car of yours and thought
you had gone home." Defendant and Caywood were
arrested and when they had proceeded about a mile on
their way out, defendant told the sheriff he had some
whiskey cached at that point and asked permission to
stop and get a drink. On the trial defendant, who testi-

fied in his own behalf, disclaimed all connection with the still. He said, however, that he had discovered it some weeks prior to his arrest, had visited it twice and sampled its mash and product. He testified that on the occasion of his apprehension, while out looking for horses, he had asked his companions to go there with him for a drink, and that on the arrival of the officers all were so intoxicated from drinking a quantity of the mash that he had no very clear recollection of his conversation.

1. Chapter 80, p. 220, L. 1925, reads:

"An Act

RELATING TO INTOXICATING LIQUORS AND PROVIDING
PENALTIES FOR THE VIOLATION THEREOF.

"Be it Enacted by the General Assembly of the State of Colorado:

"Section 1. That any person, whether acting in his own behalf, or as the agent, servant, officer or employe of any other person, firm, association or corporation, who shall be the owner of, or who shall operate or knowingly have in his possession any still used, designed or intended for the manufacture of intoxicating liquor, shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the penitentiary for not less than two nor more than five years, and in all cases of conviction the offender shall pay the costs of prosecution."

It is first said this act violates section 21, article V of our Constitution because the subject of the act is not clearly expressed in the title. Said section reads: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

If the act treats of but one general subject and that subject is expressed in the title, the constitutional re-

quirement is met. *Golden Canal Co. v. Bright,* 8 Colo. 144, 149, 6 Pac. 142. Particularity is not essential, generality is commendable. *Lowdermilk v. People,* 70 Colo. 459, 463, 202 Pac. 118. We have held that the constitutional requirement is met if the wording of the act is "germane" or "clearly germane" to the title. *In re Breene,* 14 Colo. 401, 406, 24 Pac. 3.

Webster defines the word "germane" as meaning "closely allied" or "relevant." That definition is particularly applicable here, and we can conceive of nothing more closely allied to intoxicating liquor than the machinery for its manufacture, and nothing more relevant thereto than the possession of such machinery. "An Act Relating To Intoxicating Liquor" covers the manufacture of intoxicating liquor. That manufacture includes the indispensible apparatus therefor and, if the greater includes the less, such title is sufficient for an act which deals with that apparatus. It has been recently held that "An Act Prohibiting the Manufacture of Intoxicating Liquor," was a sufficient title for a bill containing provisions identical with said chapter 80. *Cyrus v. State,* 195 Ind. 346, 350, 145 N. E. 497.

The title here under consideration covers everything that could have been covered by the Indiana title. Hence if that decision is sound, as we think it is, this title is good.

It is also said that the act contravenes section 25, article II of our Constitution, which reads: "That no person shall be deprived of life, liberty or property, without due process of law."

The argument here is that a still might be designed for the manufacture of intoxicating liquor but owned, possessed and operated for other and perfectly legitimate purposes. The argument is ingenious and interesting but wholly inapplicable to the facts. "The plaintiff in error is not in the class alleged to be injured, and cannot, therefore, be heard to question the constitutionality of the act on that ground." *Cavanaugh v. People,*

61 Colo. 292, 294, 157 Pac. 200. We find no question of due process in the instant case.

2. Defendant and Caywood were charged jointly. In the first count it is alleged that they—"then and there acting in their own behalf, and as the agent, servants and employees of a person or persons to the district attorney unknown, did then and there unlawfully and feloniously operate and feloniously and knowingly have in their possession a certain still."

In the second count it is alleged that they—"then and there acting in their own behalf, then and there unlawfully and feloniously, were the owners of a certain still."

Defendant was convicted on both counts. Caywood was convicted on the first and acquitted on the second.

Section 6645, C. L. 1921 provides: "An accessory is he or she who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of a crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly. *An accessory during the fact is a person who stands by, without interfering or giving such help as may be in his or her power to prevent a criminal offense from being committed;*  *  *  * "

By instruction No. 4 the court gave to the jury this statute, omitting the italicized portions thereof. The giving of this instruction and the omission of that portion of the statute are complained of as error. It is said that it is impossible to determine which of said defendants, if either, was an accessory; also that as the statute makes an agent a principal there can be no accessory to this offense. When we remember that there was evidence that defendant said he was helping a friend to get rid of the still, that this instruction was given to cover that fact, if the jury believed it to be such, and that "accessory" and "agent" are not synonymous terms, all these objections are disposed of.

3. The first count charged defendant with possessing and operating a still in his own behalf and as agent. This is said to be bad because of duplicity. We have held otherwise. *Moffitt v. People,* 59 Colo. 406, 412, 149 Pac. 104.

The second count charged defendant with being the owner of the still. By instruction No. 6 the jurors were told that defendants might be found guilty on both counts, whereas their requested instruction No. 13, refused by the court, limited verdicts of guilty to one count only, and their motion to require the district attorney to elect was overruled. Defendant says if two offenses are charged, the motion to elect should have been sustained and if but one offense is charged said requested instruction should have been given. It will be observed that the statute makes it an offense to own a still, or to be in possession of a still, or to operate a still. While the evidence was conflicting it was sufficient to support the charge of ownership as well as the charges of possession and operation. If the jury believed that defendant and Caywood were in joint possession of a still owned by the former the verdicts were correct and consistent. True both offenses were based upon the same transactions and depended upon the same facts. Under the verdict on the first count defendant was sentenced to not less than three and one-half nor more than five years in the penitentiary. Under the verdict on the second count he was sentenced to not less than three nor more than four years in the penitentiary, and it was ordered that the sentences run concurrently. If, as we have held, the conviction and sentence were good on the first count it would be futile and unnecessary to consider the alleged errors as to the second. *Waelchli v. People,* 77 Colo. 147, 234 Pac. 1113.

4. Defendant's witness William Flynn, being on the stand under direct examination, the following occurred:

"Q. At any time prior to that date (the date of defendant's arrest) did you have any conversation with Herman Roark regarding some horses?

"A. Yes, sir.

"Q. What was that conversation?

"Objected to as irrelevant and immaterial. Objection sustained."

That ruling was clearly correct as no time was even approximately fixed by the question. Thereupon the following offer was made in writing: "We offer to show by the witness William Flynn, now on the stand, that two or three days prior to May 28, 1925, he had a conversation with the defendant Herman Roark in which he (Flynn) told Roark that some of his (Roark's) horses had gotten out of the John Flynn pasture on Nuckles Creek and were trespassing or were upon his (William Flynn's) land on Nuckles Creek, and that he, (Flynn) wanted Roark to get his horses off of his (Flynn's) land.

This tender is made in connection with the previous testimony of this witness showing his ownership of land on Nuckles Creek."

It is here said that this testimony was offered to corroborate defendant, who had stated that at the time of his arrest he was on Nuckles Creek for the purpose of getting the horses in question. The admissibility of the evidence must, however, be determined on the basis of the purpose announced at the time of the offer and for that purpose it was clearly immaterial.

5. The evidence for the prosecution, hereinbefore briefly recited, was sufficient to convict. The verdicts disclose that the jurors did not credit defendant's explanation of it. We cannot disturb their finding on the facts.

The supersedeas is accordingly denied and the judgment affirmed.