## No. 11,367.

GREELEY TRANSPORTATION COMPANY *v.* THE PEOPLE.

Decided April 19, 1926.

Action to enjoin the operation of an auto bus line. Injunction granted.

### *Affirmed.*

1. CONSTITUTIONAL LAW—*Statutes—Title.* Particularity is not essential in the title of an act, and generality is not fatal.

2. *Public Utilities Act.* The Public Utilities Act (C. L., c. 46), in so far as it attempts to deprive district courts of jurisdiction is unconstitutional.

3. *Statutes—Construction.* The unconstitutionality of a portion of an act does not invalidate the remainder, if the act is separable, and the remainder can stand alone.

4. PUBLIC UTILITIES—*Commission Orders—Review.* Orders of the public utilities commission may be reviewed by the district court.

5. *Commission Orders—Review.* The contention that the validity of the proceedings of the public utilities commission can only be indirectly reviewed by violating its orders and testing their validity in an action to impose penalties, is not tenable.

6. STATUTES—*Construction.* What is expressed in a statute is exclusive only when it is creative or in derrogation of some existing law.

7. *Enactment—Presumption.* The enactment of a law does not raise a presumption that it did not exist before.

8. PUBLIC UTILITIES—*Common Carriers.* All common carriers are within the Public Utilities Act, and the fact that they do or do not compete with railroads is immaterial.

9. PRACTICE AND PROCEDURE—*Constitutional Law.* The constitutionality of a portion of an act may not be attacked by a litigant as to whom, the question attempted to be raised is immaterial.

10. LEGISLATION—*Referendum.* The rejection by referendum is not a prohibition against enactment by the legislature.

11. PUBLIC UTILITIES—*Regulation.* One has the constitutional right to engage in a lawful business, but when it is affected with a public interest, as is that of a common carrier, the right of the public to say under what conditions it shall operate is beyond question.

12.     *Commission Orders—Enforcement.* The attorney general is the proper representative of the people to bring actions for the enforcement of orders of the public utilities commission.

13. MANDAMUS—*Utilities Commission.* Mandamus is the remedy to compel action by the utilities commission, and not operation without the required certificate of convenience and necessity.

14. AUTOMOBILES—*Common Carriers—Public Utilities.* Automobiles transporting passengers for hire between designated points are common carriers, and a certificate of convenience and necessity is essential to the operation of such lines, under the Public Utilities Act.

*Error to the District Court of the City and County of Denver, Hon. James L. Cooper, Judge.*

Mr. HARRY S. CLASS, Mr. E. H. HOUTCHENS, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. S. E. NAUGLE, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THE people, by the attorney general, obtained an injunction restraining plaintiff in error, hereinafter referred to as defendant, from carrying on the business of transporting passengers for hire by automobile between certain designated points and in competition with railways, until it should obtain a "certificate of convenience and necessity" from the public utilities commission. To review that judgment defendant brings error.

The assignments which are argued, and which require consideration, may be thus grouped: 1. The Utilities Act is unconstitutional because: (a) The subject matter

is not germane to the title; (b) it denies due process of law by prohibiting a direct judicial review, and permitting such review indirectly only under the threat of excessive penalties; (c) it is based upon illegal classification and exception; (d) its passage was prohibited under the referendum; (e) its operation results in the prohibition of a lawful business, which prohibition is beyond the power of the legislature. 2. The complaint shows on its face that the action cannot be maintained. 3. The record does not support the judgment because: (a) It shows that defendant applied for a certificate of public convenience and necessity and was denied a hearing; (b) it shows that defendant's business does not come within the classification requiring such certificate.

Our Public Utilities Act is chapter 127, p. 464, L. 1913; chapters 133 and 134, pp. 392 and 393, L. 1915; and chapter 109, p. 415, L. 1917. As amended it is found in its entirety in C. L. 1921, sections 2911 to 2977, both inclusive, beginning at page 917. When not otherwise indicated it is to this volume we hereinafter refer.

1. (a) The title of the act of 1913 reads: "An act concerning public utilities, creating a public utilities commission, prescribing its powers and duties and repealing certain acts and parts of acts in conflict therewith." Subdivision (e) of section 2 of that act defines the term "common carrier," which definition does not mention automobiles.

The title of chapter 133, L. 1915 reads: "An act declaring the transportation of passengers, freight or express for hire in any automobile or other vehicle operating for the purpose of affording a means of transportation similar to that afforded by railroads or street railways, to be a public utility."

The title of chapter 134, L. 1915, reads: "An act to amend subdivision 'e' of section 2 of an act entitled 'an act concerning public utilities, creating a public utilities commission, prescribing its powers and duties and repealing certain acts and parts of acts in conflict

therewith.' '' This act repeats the definition of common carriers given in the Act of 1913, but adds the following: ''and every other corporation or person affording a means of transportation, by automobile or other vehicle whatever, similar to that ordinarily afforded by railroads or street railways, and in competition therewith, by indiscriminately accepting, discharging and laying down either passengers, freight or express between fixed points or over established routes.''

The title of chapter 110, L. 1917, reads: ''An act to amend 'an act concerning public utilities, creating a public utilities commission, prescribing its powers and duties, and repealing certain acts and parts of acts in conflict therewith,' approved April 12, 1913.''

Sections 35, 36 and 37 of the Act of 1913 were referred to the people at the following general election and rejected. These prohibited, inter alia, the construction or extension of utilities named without first procuring from the commission a certificate of convenience and necessity. This, it is said, left the act, as it finally became operative, a mere regulatory statute. The Act of 1917 amended the Act of 1913 by adding to it a section to be numbered 35, which provided, inter alia, that no public utility should thereafter construct or extend a system without first procuring from the commission a certificate of public convenience and necessity. This, it is said, converted the regulatory act into a prohibitory one and the body of the latter is not germane to the title of the former. If the body of the original act was germane to its title the same relationship must have existed after the reference and rejection of sections 35, 36 and 37 thereof and the amendment of 1917. All this is, in fact, but a new form of an old objection, i. e., that in such titles particularity is essential and generality fatal. The contrary is settled in this jurisdiction. *Roark v. People,* 79 Colo. 181, 244 909.

(b) This proposition requires an examination of the statute and our former construction thereof. ''Within

thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the supreme court of this state for a writ of review for the purpose of having the lawfulness of the original order or decision on rehearing inquired into and determined. Such writ shall be made returnable not later than thirty days after the date of issuance thereof and shall direct the commission to certify its record in the case to the court. On the return day, the cause shall be heard by the supreme court, unless for a good reason shown the same be continued. No new or additional evidence may be introduced in the supreme court, but the cause shall be heard on the record of the commission as certified by it. The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the state of Colorado, and whether the order of the commission is just and reasonable and whether its conclusions are in accordance with the evidence. The findings and conclusions of the commission on disputed questions of fact shall be final and shall not be subject to review. The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceeding. Upon hearing, the supreme court shall enter judgment either affirming, setting aside or modifying the order or decision of the commission. The provisions of the code of civil procedure of this state relating to writs of review shall so far as applicable and not in conflict with the provisions of this act, apply to proceedings had in the supreme court under the provisions of this section. No court of this state (except the supreme court to the extent herein specified) shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or oper-

ation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties; Provided, That the writ of mandamus shall lie from the supreme court to the commission in all proper cases." Sec. 2961, p. 935, C. L. 1921.

This section, it will be observed, provides for a complete judicial review, in which even the justness and reasonableness of the commission's order may be inquired into, and that order affirmed, revoked or modified; that such review shall be had in the supreme court; and that the district court is without jurisdiction thereof.

In *Clark, et al. v. D. & I. R. R. Co.,* 78 Colo. 48, 239 Pac. 20, we held that portion of said section which seeks to impose original jurisdiction upon the supreme court unconstitutional. For the same reason that portion of the section which attempts to deprive the district court of jurisdiction is unconstitutional, because section 11, article VI, of our Constitution provides that "The district courts shall have original jurisdiction of all causes both at law and in equity." It is a general rule of construction that the unconstitutionality of a portion of an act does not invalidate the remainder if the act is separable and the remainder can stand alone. That rule is particularly applicable here, and if express legislative declaration can aid it, such declaration is not wanting. Section 67 of the act of 1913 (sec. 2975, p. 941, C. L. 1921), reads: "If any section, subsection, sentence, clause, or phrase of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act. The General Assembly hereby declares that it would have passed this act, and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional."

Both rule and statute thus require that in case the original jurisdiction prohibited to the district court and

conferred upon the supreme court be held unconstitutional the remedy provided must stand and the writ be sued out of the district court as commanded by the Constitution. This conclusion appears to us so inevitable that further elucidation becomes superfluous. In the light of this construction the position that the validity of the proceedings of the commission can only be indirectly reviewed by violating its orders and testing that validity in an action to impose heavy penalties or punish for contempt, and at the risk of incurring those penalties if unsuccessful, becomes untenable.

(c) Section 2913 (sec. 3 of the act of 1913), provides that "the term 'public utility,' when used in this act, includes every common carrier  *  *  *." Subdivision (e) of section 2912 (sec. 2, chap. 134, L. 1915), provides that "the term 'common carrier,' when used in this act, includes every railroad corporation,  *  *  *  *and every* *other corporation or person affording a means of transportation, by automobile or other vehicle whatever, similar to that ordinarily afforded by railroads or street railways, and in competition therewith,* by indiscriminately accepting, discharging and laying down either passengers, freight or express between fixed points or over established routes;"

Section 2914 (chap. 133, L. 1915), reads: "Any person, firm, association of persons or corporation, now or hereafter engaged in transporting passengers, freight or express for hire in this state in any automobile or other vehicle whatever, and operating *for the purpose of affording a means of transportation, similar to that afforded by railroads or street railways, and in competition therewith* by indiscriminately accepting, discharging and laying down either passengers, freight or express, between fixed points and over established routes is hereby declared to be affected with a public interest, and to be a public utility, and subject to the laws of this state now in force and effect or that may hereafter be enacted pertaining to public utilities."

Defendant says that the italicized limitation creates an unreasonable and arbitrary classification which makes the act unconstitutional under the ruling in *Leonard v. Reed,* 46 Colo. 307, 104 Pac. 410. The business defined by the statute, inclusive as well as exclusive of the limitation, was that of a common carrier before the passage of the act. Berry, Automobiles (4th Ed.) sec. 1652, p. 1418; Huddy on Automobiles (6th Ed.) sec. 131, p. 152.

The statutory definition, so far as it relates to defendant's business, is expressly inclusive, not exclusive. It neither creates a new status nor abolishes a prior one. "What is expressed is exclusive only when it is creative, or in derrogation of some existing law." Lewis, Sutherland Stat. Const. (2nd Ed.) Vol. 2, sec. 491. "The enactment of a law does not raise a presumption that it did not exist before." Id. sec. 495. Hence this statutory definition, as to defendant's business, makes no change in the prior law. It is merely declaratory and the limiting clause is pure surplusage. If a statute concerning livestock provided that the term "horses" when used in this act includes "cow-ponies," draft horses would not be thereby excluded.

All common carriers are within the act, and the fact that they do or do not compete with railroads, is immaterial.

Subdivision h of section 2946 (Act of 1917, which by its terms became section 35 of the original act), contains this exception: "Provided, however, that this section shall not apply to steam railroads." It is said that under the ruling in *Smith v. Farr,* 46 Colo. 364, 104 Pac. 401, this clause renders the act in question unconstitutional. If, however, the exception is invalid it may be so declared without affecting the remainder of the act, as it is clearly separable. As the present controversy has no relation to steam railroads this question is immaterial to it, and the defendant can not raise it here. *Cavanaugh v. People,* 61 Colo. 292, 294, 157 Pac. 200.

(d) Counsel for defendant contend that the rejection, by referendum, of sections 35, 36 and 37, of the Act of 1913, in some way operated as a prohibition against the enactment by the legislature of chapter 109, Laws of 1917. We have held otherwise. *In re Senate Resolution No. 4,* 54 Colo. 262, 270, 129 Pac. 811.

(e) Defendant stoutly maintains its constitutional right to engage in a lawful business and the invalidity of any statute prohibiting it. The general principle may be admitted, but when that business is affected with a public interest, as is that of common carrier, the right of the public to say under what conditions it shall operate is beyond question. When the common carrier seeks to utilize public property, such as streets and highways, in the operation of that business, obligation and authority become two-fold. One may have an unquestionable constitutional right to engage in a legitimate mercantile business, but he has no right to establish that business in the corridors of the State House. Were the law otherwise the very citizens who build and maintain these avenues of travel might be entirely driven from them by usurpers. The authorities upholding this legislative power are numerous. *Davis v. Massachusetts,* 167 U. S. 43, 17 S. Ct. 731, 42 L. Ed. 71; *Packard v. Banton,* 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; *Ex parte Tindall,* 102 Okl. 192, 229 Pac. 125; *Frost, et al. v. R. R. Com. et al.* (Cal.), 240 Pac. 26.

2. Defendant says this action is not brought in the name of the real party in interest; that the attorney general is unauthorized to appear; and that no damages are alleged and no bond given; hence the suit can not be maintained. Section 2966 makes the attorney general attorney for the commission. Section 2969 provides that under the facts here pleaded the commission shall proceed by its attorney, in the name of the people, to stop the violation of law, and that such procedure may be by injunction. Section 173, Civil Code, p. 136, C. L. 1921, excepts the state from the requirement for bond in

injunction suits. These statutes being constitutional, no reason is suggested why they are not valid and applicable. They answer all the foregoing objections.

3. (a) It is said the injunction can not stand because the commission denied defendant a hearing. If so its remedy was mandamus to compel action, not operation without the required certificate. Chap. 30, Civil Code, p. 165, C. L. 1921; 38 C. J. p. 657, sec. 197.

(b) It is urged that the record does not support the allegation that defendant's business is "similar to and in competition with" railroads. We need not examine the claim. The business is clearly that of a common carrier and under the terms of the act the certificate of convenience and necessity is essential to its operation.

Finding no reversible error in the record the judgment is affirmed.

---

IN THE SUPREME COURT OF COLORADO

In Open Session En Banc

May 3, 1926.

Mr. William A. Bryans, an attorney of the court, was called before the bar and thus addressed by the Chief Justice:

Mr. Bryans, you have, by the authority established by this court to act under such circumstances, been found guilty of negligence in the transaction of the business of your client and the practice of deception to cover up such negligence, all to the injury of that client and in violation of your duty as an attorney. It has furthermore been recommended that you be reprimanded for that conduct. Both finding and recommendation have been approved. For that reprimand you are now called before the court.

In our judgment your conduct in this instance was a gross violation of your duty to your client and a gross violation of your duty as an officer of this court. It con-

stitutes a serious injury to your profession and is not to be tolerated in this jurisdiction. You are thus publicly reprimanded for it, solemnly warned against a repetition thereof, and advised that any such will be sufficient cause for your disbarment.

This judgment is thus limited only provided you compensate the injured parties so far as possible for their pecuniary loss and give no further cause for complaint against you in your professional capacity.

Mr. Justice Whitford concurs in this judgment but is of the opinion that the facts justify a reference of the matter to the attorney general with instructions to bring disbarment proceedings.