No. 13,513.

TITUS *v.* TITUS.
(41 P. [2d] 244)

Decided January 21, 1935. Rehearing denied February 11, 1935.

Mr. Edgar McComb, Mr. Milton D. Green, for plaintiff in error.

Messrs. Fairfield, Gould & Woods, Mr. Henry A. Kugeler, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

A suit by the woman for specific performance of a property settlement and financial rights agreement entered into by the parties while they were husband and wife. The man pleaded two defenses: One, that in a former suit between the parties to the same end, but concerning earlier defaulted payments, there had been final judgment in denial of an application by plaintiff for specific performance; and, two, that chapter 72, Session Laws 1933, generally, and certain sections thereof, particularly, under which it is sought to maintain this suit notwithstanding the previous adverse judgment, violate designated provisions of the Constitution. A demurrer to these defenses was overruled. On plaintiff's election to stand on her demurrer judgment was given against her. Error is assigned.

The facts are simple. In a complaint filed May 22, 1933, plaintiff alleged: That September 15, 1927, the parties, then living separate and apart, but contemplating divorce proceeding by the wife, entered into a separate agreement and property settlement, whereby, so far as important to our inquiry, the husband agreed that commencing September 28, 1927, and monthly thereafter on the same date, during his lifetime, and while the wife lived and did not remarry, he would pay her the sum of

$175, and the said agreement "may be enforced * * * by proceedings in the usual form for specific performance of contracts"; that defendant was in default for the payments due March 28, 1933, and April 28, 1933, and had threatened he would make no further payments. Defendant admitted the contract and defaults, denied otherwise, and answered further as already indicated. The problem is whether the act, approved May 11, 1933, entitled "An Act Relating to Marriage and Divorce," and which went into immediate effect, reading as follows, is constitutional:

"Section 1. An action for separate maintenance (divorce from bed and board) may be maintained by a wife:

"(a) Upon any ground provided by law for divorce.

"(b) Where the wife has been abandoned by the husband without just cause or excuse, and a reconciliation is not probable, and it would be just or proper to grant such relief.

"(c) Upon any ground generally recognized in equity.

"Section 2. A decree granting separate maintenance shall not bar either of the parties from subsequently bringing and maintaining an action for divorce.

"Section 3. The District Court shall have jurisdiction of all actions for separate maintenance and the County Court shall have jurisdiction of all actions for separate maintenance wherein a complaint shall allege that the plaintiff does not ask or seek support or maintenance funds in excess of Two Thousand ($2,000.00) Dollars. The form of process and the manner and method of service thereof shall be as is provided for in divorce actions. The practice and procedure applicable to other civil actions shall govern actions for separate maintenance.

"Section 4. At all times after the filing of the complaint in [sic] the court in term time or the judge in vacation, may make reasonable orders for temporary support, suit money or counsel fees and for the care and custody

of a minor child or children of the parties and may, upon the entry of the decree of separate maintenance, make such permanent orders, or may, in the proper case, determine the property rights of the parties or decree a division of property upon such terms and conditions as the Court shall deem just.

"Section 5. Courts shall have jurisdiction to enforce specifically the terms and payments provided in marriage settlement contract and separate maintenance agreements, heretofore or hereafter entered into whether the parties have been divorced or not.

"Section 6. Such marriage settlement contract or separate maintenance agreement heretofore or hereafter entered into in this State, or a decree for separate maintenance heretofore or hereafter granted in this State, shall not be defeated or affected, or barred in any way, by any decree of divorce thereafter obtained by one of the parties in some other state or country, if no personal service within such state or country was had upon the party adversely affected by such decree of divorce, and if such party did not personally appear in such action; and such decree of divorce so obtained, shall not be used as a bar or estoppel to, or be admitted in evidence in any proceedings to enforce, or concerning, affecting or involving in any way, such marriage settlement, separate maintenance agreement or decree of separate maintenance.

"If, in any action heretofore brought to enforce any of the terms, payments or conditions of a separate maintenance agreement or marriage settlement contract, specific performance has not been granted, such decision denying specific performance, shall not bar or prevent the institution of a new action to enforce specifically the terms, payments and conditions of such marriage settlement contract or separate maintenance agreement as to the keeping or performance of any of the terms, payments or conditions accruing or becoming due subsequent to the rendition of such decision.

"Section 7. Appeals from the County Court to the District Court and writs of error to the Supreme Court shall lie as in any other civil action."

The provisions of the Constitution which it is said the act contravenes, set forth in the order of our discussion, are as follows:

Section 21, article V. "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Section 11, article II. "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly."

Article III. "The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

The title of the act is general, but we think none of the provisions covers incongruous legislation, or which by fair intendment may not be said to have proper connection. That is the test. *Lowdermilk v. People,* 70 Colo. 459, 202 Pac. 118; *In Re Breene,* 14 Colo. 401, 24 Pac. 3; 25 R. C. L. 853, 854, §99. See, also, *Roark v. People,* 79 Colo. 181, 244 Pac. 909; *Greeley T. Co. v. People,* 79 Colo. 307, 245 Pac. 720. "Any provision of the act directly or indirectly relating to the subject expressed in the title, and having a natural connection therewith and not foreign thereto, should be held to be embraced in, it." 25 R. C. L. 856, §101. "Particularity is not essential, generality is commendable." *Roark v. People, supra.* We

conclude that the title of the act under examination, reasonably viewed, warranted the legislature in including in the bill sections pertaining to marriage contracts and separate maintenance agreements, and outline of procedure looking to their judicial enforcement.

 Subsequent to the execution of the contracts, and prior to the legislative act in question, in a suit for specific performance for immediate defaults under the contract, there was, as we have seen, judgment of denial of that relief. It is said that section 5 and the second paragraph of section 6 of the act providing that the denied remedy should be available for subsequent defaults, are violative of the constitutional provision already quoted, pertaining to ex post facto laws. Obviously, we think, the challenged provisions are remedial in character and effect, and, therefore, are not vulnerable to the directed attack. "The abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies." *Moore v. Chalmers-Galloway Live Stock Co.,* 90 Colo. 548, 554, 10 P. (2d) 950. We are not interested in knowing what prompted the judgment pleaded in bar of the present suit. It suffices to say that although the judgment operated to deny a remedy agreed upon by the parties to the contract, the court must rightly have held that the rules of procedure then applicable did not warrant its invocation. The legislature, prompted, as we may surmise, by the enlightenment shed by the court in its pronouncement, and recognizing, nevertheless, the wisdom and righteousness of the remedy the court had rejected, enacted legislation calculated to afford such remedy for like contracts, and for subsequent defaults in contracts where in the attempted enforcement of earlier ones, the remedy had been denied. "The courts have recognized that without violating a constitutional prohibition as to retrospective legislation the state may make laws for * * * the enforcement of existing contracts,

and, in general, laws curing defects in the remedy, or confirming rights already existing, or adding to the means of securing and enforcing them." 6 R. C. L. 305, §291. "Although a retrospective statute, affecting and changing vested rights, is very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void, this doctrine is not understood to apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy, by curing defects, add to the means of enforcing existing obligations." 6 R. C. L. 320, §309. "The law, undoubtedly," said the Connecticut court, addressing itself to a like question, "is retrospective; but is it unjust? * * * A law, although it be retrospective, if conformable to entire justice, this court has repeatedly decided is to be recognized and enforced." *Beach v. Walker,* 6 Conn. 190, 197. In a later Connecticut case (*Savings Bank v. Allen,* 28 Conn. 97, 102), it was said the principle to be adopted is, "that when a statute is expressly retroactive, and the object and effect of it is to correct an innocent mistake, remedy a mischief, execute the intention of the parties, and promote justice, then, both as a matter of right and of public policy affecting the peace and welfare of the community, the law should be sustained." The enactment here not only does no violence to the rights of defendant, but gives force and effect to an express provision of his contract. We think the legislative creation of the remedy sought to be invoked by plaintiff is not subject to the inhibition of the Constitution.

We are not impressed with the contention that the act of the legislature contravenes article III of the Constitution, quoted above. We cannot conceive that a remedy provided by legislative enactment, otherwise allowable, should be thought to be an invasion of the powers of the judicial department.

Let the judgment be reversed, the demurrer to the several affirmative defenses to be sustained.