No. 13,235.

PEOPLE EX REL. PARK RESERVOIR COMPANY v.
HINDERLIDER ET AL.
(57 P. [2d] 894)

Decided February 3, 1936. Rehearing denied April 27, 1936.

506

Mr. MILTON R. WELCH, Mr. MALCOLM LINDSEY, for plaintiff in error.

Messrs. MOYNIHAN, HUGHES & KNOUS, Messrs. FAIRLAMB & FAIRLAMB, for defendants in error.

Mr. C. M. ROLFSON, Mr. T. E. MUNSON, Mr. HARRY N. HAYNES, Mr. C. D. TODD, Mr. JAMES D. PARRIOTT, Mr. ROY C. HECOX, Messrs. LEE, SHAW & McCREERY, Messrs. FARRAR & MARTIN, amici curiae.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court. We hereinafter refer to them as plaintiff and defendants.

Plaintiff has a decree for storage water for irrigation of date October 1, 1888. It takes its water from Surface Creek on which its reservoir is built. When spring floods have subsided the stream does not furnish sufficient water for direct irrigation for lands under ditches taking therefrom. The priorities of some of these antedate that of plaintiff, others are subsequent. The total capacity of all exceeds the creek flow, even in flood times, save when this is unusually large. Defendants, water officials charged with the duty of administration, refused plaintiff the right to store when the ditches needed the water for direct irrigation, irrespective of the dates of their priorities. Plaintiff, claiming the right to store as aganst ditches with subsequent priorities, brought mandamus. Defendants demurred for want of parties (because water users under said ditches were not joined) and for want of facts. The demurrer was sustained on both grounds. Plaintiff elected to stand and the action was dismissed at its costs. To review that judgment it prosecutes this writ.

Many pages of briefs filed herein, much oral argument, and countless authorities cited, are devoted to the exposition and maintenance of the following propositions: Where a statute is susceptible of an interpretation which conforms to the Constitution and another which violates it the former will be adopted. *Chicago B. & Q. Ry. Co. v. School Dist.*, 63 Colo. 159, 165 Pac. 260.

Where the language used is plain, its meaning clear, and no absurdity is involved, Constitution, statute or contract, must be declared and enforced as written. There is nothing to interpret. *People ex rel. Seeley v. May*, 9 Colo. 80, 10 Pac. 641.

Sections 5 and 6 of article XVI, Colorado Con-

508

stitution, are self-executing. *Lyons v. Longmont,* 54 Colo. 112, 129 Pac. 198.

■ The police power cannot transcend the Constitution nor be so exercised as to abrogate it. *Smith v. Farr,* 46 Colo. 364, 104 Pac. 401.

■ In Colorado the doctrine of appropriation of water antedates the Constitution. *Coffin v. Left Hand Ditch Co.,* 6 Colo. 443, 446. Water rights are property rights. *Ft. Lyon Co. v. Rocky Ford Co.,* 79 Colo. 511, 515, 246 Pac. 781. The test of priority of right is beneficial use, not means of application. *Thomas v. Guiraud,* 6 Colo. 530. The rule "First in time first in right" applies as between users for the same purpose. Sec. 6, art. XVI, Colorado Constitution. Junior appropriators may not infringe the right of seniors. *Comstock v. Ramsay,* 55 Colo. 244, 133 Pac. 1107. Junior appropriators for a use preferred under said section 6 may not take from senior appropriators for a subordinate use without compensation. *Town of Sterling v. Pawnee D. E. Co.,* 42 Colo. 421, 94 Pac. 339.

■ Long usage can neither repeal constitutional provisions nor justify their infraction. *Leckenby v. Post Company,* 65 Colo. 443, 176 Pac. 490. In cases of doubt long usage and practical construction by governmental departments should control. *Webster v. Luther,* 163 U. S. 331, 16 Sup. Ct. 963, 41 L. Ed. 179.

■ Recognition of claims of property rights based upon an unconstitutional statute can never ripen into a contract. *Great Plains W. Co. v. Lamar C. Co.,* 31 Colo. 96, 71 Pac. 1119.

While the foregoing legal principles should be borne in mind in considering the questions here presented, few of them are directly involved and all are so firmly established and so wholly unquestioned that we merely restate them and cite a single authority in support of each.

■ We consider first the sufficiency of the complaint. To determine that, we must decide whether a senior reservoir may take, for storage, its full appropri-

ation when a portion of the water is needed by junior ditches for direct irrigation. Defendants say no, and stand upon section 1682, C. L. 1921, which is section 38, page 106, of the General Irrigation Act of 1879. The portion thereof here in question reads: "Persons desirous to construct and maintain reservoirs, for the purpose of storing water, shall have the right to take from any of the natural streams of the state and store away (only) any unappropriated water not (then) (thereafter) needed for immediate use for * * * irrigating purposes; * * *." The words in parenthesis are not in the act, but most of the arguments presented contend for an interpretation which would require one or another of them to be so written.

Plaintiff answers that the statute has been repealed, and that if not it is no defense unless, as defendants claim should be done, the said word "thereafter" be read into it, in which case, it says, it violates the Constitution, and particularly that portion of section 6, article XVI, which stands as adopted in 1876, and which reads: "The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes."

Assuming, without deciding, that the statute is in force, that the legislature was not prohibited by the Constitution from passing it with the word "thereafter" inserted, and that such is its proper interpretation, we must next determine whether the word "only" should be read into it. All the arguments assume that the act means just what it would if that word were inserted.

We think a careful reading of it will show the error of that assumption. As the act stands it is a grant, with that word inserted it is a prohibition.

In territorial days, and during the first three years of statehood, reservoirs were built, and others could have been. Assuming the Constitution left the General Assembly free to forbid reservoirs taking, under senior appropriations, water thereafter needed by ditches for direct irrigation under junior appropriations, no such act had been passed. In its absence, doubtless, such reservoirs and ditches stood upon an absolute equality. Priority of appropriation and useful application alone controlled. When a reservoir made its appropriation it was unqualified by any contingent needs of junior ditches for water for direct irrigation in the future. "First in time first in right" ruled. The senior reservoir could not only take and store water "not then" needed for immediate use for irrigation, but also water "*not* thereafter" so needed, and "thereafter" so needed. This conclusion not only appeals to us as correct; it is assumed in all the arguments here made. Then came the Act of 1879 which gave the reservoir the right (if we interpret statute and Constitution as defendants contend) to take and store "water *not thereafter* needed" for direct irrigation. The right thus purportedly granted was but a part of a right already existing. How then did it *prohibit* diversion by the reservoirs of water *thereafter* needed for direct irrigation? Only, it seems to us, by implication, and that by invoking the maxim, "The expression of one is the exclusion of another." But the maxim is not applicable to a statute merely affirming existing law. *City of Lexington v. Commercial Bank,* 130 Mo. App. 687, 692, 108 S. W. 1095. In the interpretation of a contract we have said, in substance, that where a right exists it is not strengthened by repetition, nor is it revoked by failure to repeat. The maxim does not apply in such cases. *Loveland v. Clark,* 11 Colo. 265, 269, 18 Pac. 544. It follows that the maxim may never be resorted to in denial of existing rights by

invoking its aid in the interpretation of a statute granting others which are not inconsistent. This is doubly true when it appears, as here, that the very right which the statute purports to grant is one which already exists. For instance, an act granting a defendant the right of trial by jury, in a case where such right already exists, could not, by resort to the maxim, be interpreted as a repeal of other statutes granting such right in other cases. If this conclusion is correct we are not at liberty to write into the Act of 1879, by way of interpretation, the word "only," and without it that portion of the statute in question confers upon plaintiff nothing it had not theretofore, and takes from it nothing it theretofore had. We accordingly find that the complaint states a cause of action.

 It remains only to consider whether the demurrer for want of parties was good. This depends upon the availability of the remedy sought. If mandamus was the proper remedy, other water users on the stream need not be made parties. The rights of all have been established by decrees entered in general adjudication proceedings. The remedy here sought is simply the enforcement of such judgments by officials charged therewith. That the remedy is the correct one and the parties sufficient is, we think, amply established by the following: *People ex rel. v. Jefferson Dist. Court,* 46 Colo. 386, 104 Pac. 484; *Smith v. School Dist.,* 88 Colo. 309, 295 Pac. 794; *Terrace Dist. v. Braiden,* 92 Colo. 292, 299, 19 P. (2d) 756.

This cause was first assigned to the writer a year ago and an opinion affirming the judgment was handed down April 15, following. Then came petitions for rehearing by the plaintiff and others, eight in all, in which, by leave of court, the entire cause was re-presented, and this again by oral argument September 9, 1935. Thus while no rehearing has been granted the procedure followed has given counsel all the advantage thereof. In fact some of them were permitted to appear for the first time by briefs on these petitions. Perhaps few cases in

this court have been more fully presented, or received more careful and extended consideration by the justices, due largely to the extent and importance of the interests involved and the number and standing of counsel representing those interests. Our earlier labors were naturally devoted to a consideration of the theories advanced in the briefs and the reasons urged in their support. Our former opinion, hereby withdrawn, was thus written. Very recently, however, we have reached the conclusion that this judgment should be reversed for the foregoing reasons, reasons not assigned in any of the very able briefs or oral arguments with which we have been favored, save inferentially, where Messrs. Lee, Shaw & McCreery cite *Greeley Transportation Co. v. People,* 79 Colo. 307, 314, 245 Pac. 720, and quote therefrom the following: " 'What is expressed is exclusive only when it is creative, or in derogation of some existing law.' Lewis, Sutherland Stat. Const. (2nd Ed.), Vol. 2, Sec. 491. 'The enactment of a law does not raise a presumption that it did not exist before.' Id. Sec. 495.''

Such being the disposition of it, not only are defendants in error entitled to petition for a rehearing, if so advised, but to argue that petition, and plaintiff in error and amici curiae to answer such argument. Such petition and briefs, if any, will be filed as by our rules provided and limited to this opinion. Such of amici curiae as desire to appear further will join in a single brief.

The judgment is accordingly reversed and the cause remanded for further proceedings in harmony herewith.

Mr. Justice Butler, concurring.

For the reasons stated in the principal opinion and in this opinion, I concur in the reversal of the judgment.

On *October 1, 1888,* certain landowners commenced the construction of the reservoir involved in this suit. They completed the reservoir with diligence and applied the water to the *irrigation of growing crops on their land.* They thereby made a valid appropriation of unappropri-

ated water for irrigation purposes to the extent of 2,083 acre feet, and acquired a vested right of which they could not be deprived by subsequent appropriators or by any act of the General Assembly. After making such appropriation, they incorporated a mutual reservoir company, the relator herein, and conveyed to it the reservoir and their water rights pertaining thereto. Thereafter, up to the present time, the water has been used by the stockholders for the irrigation of their lands. In 1907, in a general adjudication proceeding, the court decreed to the company priority *as of October 1, 1888,* for 2,083 acre feet of water *for the purpose of irrigation.*

The principal question for decision is whether appropriators having appropriations of later date, in other words, junior appropriators—and there are many of them—are entitled to use for irrigation purposes the water theretofore appropriated for irrigation purposes by the predecessors of the company and confirmed to the company by decree of court in the adjudication proceeding.

1. The contention of the defendants in error is based upon the following provision in section 38 of Session Laws of 1879, page 106, appearing in Compiled Laws of 1921 as section 1682: ''Persons desirous to construct and maintain reservoirs, for the purpose of storing water, shall have the right to take from any of the natural streams of the state and store away any unappropriated water not needed for immediate use for domestic or irrigating purposes.''

Where a statute reasonably admits of two constructions, one harmonizing the act with the Constitution, the other bringing it into conflict therewith or raising a reasonable doubt of the constitutionality of the act, the former construction should be adopted by the court.

The Territorial Legislature passed two acts to prevent waste of water. The Act of 1872, amending chapter 45 of Revised Statutes of 1868, made it unlawful to permit more water to run in a ditch than is necessary, and pro-

vided that when water is not needed for irrigating purposes it should not be allowed to run in the ditch. The Act of 1876 (S. L., p. 78) made it unlawful for any person to run through his irrigating ditch any greater quantity of water than is absolutely necessary for irrigating his land and for domestic and stock purposes. There are times, for instance in flood time, when more water is available than is needed by the appropriators. With knowledge of that fact and of the Acts of 1872 and 1876, the General Assembly of 1879, it is not unreasonable to suppose, intended by the provision now under discussion that an owner of a reservoir for irrigation purposes shall have the right to take and store unappropriated waters, and also waters that already have been appropriated by others but that are not at the time needed by such prior appropriators for immediate use for domestic or irrigation purposes. Such storage would save the water from going to waste, a most desirable object in this "dry and thirsty land," where every drop of water is sorely needed. Such a construction would save the statutory provision from coming into conflict with the Constitution, and I believe that such construction is permissible.

The trial court said: "The water officials of the state have always given force and effect to the statute as meaning that a senior or any reservoir appropriator for agricultural purposes may not store water at a time when it is needed for immediate use by a junior direct appropriator of water."

The case was decided on demurrer to the alternative writ of mandamus, and I find nothing in the record to sustain that statement of the trial court. The attorneys are not in agreement as to the construction given to the provision by the various water officials in past times, but it is admitted that during at least four years (1897, 1898, 1913 and 1914) the state engineer's rulings were not in harmony with the views expressed by the trial judge. We would not be justified in stating broadly, as a matter

of which we can take judicial notice, that the practical construction by the water officials has been as stated by the trial court. Some of the officials have so construed the provision, but, as we have seen, the construction has not been uniform.

2. If the provision now under consideration means what the defendants in error say it does, it has been repealed by implication by the Acts of 1881 and 1887.

The former act (S. L. 1881, page 142, et seq.), provides for adjudicating water rights for irrigation purposes. Without analyzing the several sections, it may be said that the act recognizes that appropriations of water for irrigation by means of a reservoir and appropriations of water for irrigation by means of ditches are upon an equality, and that they shall have priority according to the dates of the respective appropriations, without any distinction between the two methods of accomplishing the purpose of the appropriation, namely, the application of the water to the soil. The adjudication proceeding culminates in a decree, which the act provides "shall further number each several appropriation of water consecutively, beginning with the oldest appropriation, *without respect to the ditches or reservoirs by means of which such appropriations were made.*" (Italics are mine.) Section 37 repeals all laws and parts of laws inconsistent with the provisions of the act.

The inconsistency of the 1879 provision with the Act of 1881 is obvious.

The Act of 1887 (S. L. 1887, page 295, et seq.) requires (section 2) that the superintendent of irrigation shall "execute the laws of the state relative to the distribution of water *in accordance with the rights of priority of appropriation, as established by judicial decrees.*" (Italics are mine.) See also section 9. Section 10 provides that if the division superintendent of irrigation shall ascertain that "any ditch, canal or reservoir of any other district of his division is receiving water to which

any ditch, canal or reservoir of any other district is entitled, he shall at once order the shutting down of the *post-dated* ditches, canals or reservoirs, and the water given to the ditches, canals or reservoirs *having the priority of appropriation.*" (Italics are mine.)

The provision of the 1879 Act is inconsistent with these provisions.

The provision of the Act of 1879 under consideration in this proceeding is so inconsistent with the Acts of 1881 and 1887 as clearly to be repealed by implication.

3. If the provision in question were capable of no construction other than that contended for by the defendants in error, and if it has not been impliedly repealed by subsequent legislation, it is in conflict with the Colorado Constitution and therefore is void.

Section 5 of article XVI provides: "The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided."

Section 6 of the same article provides: "The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. *Priority of appropriation shall give the better right as between those using the water for the same purpose;* but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes." (Italics are mine.)

The appropriation made by the predecessors of the Reservoir Company and confirmed in that company by decree in the adjudication proceeding was for agricultural purposes and the appropriations made by the ditch owners were for agricultural purposes. The appropria-

tion by the former was prior to the appropriations by the latter, and as all are using the water for the same purpose, namely, for the irrigation of agricultural land, under the clear terms of the Constitution the former has the better right.

The Constitution makes no distinction between appropriations based upon the means or instrumentality employed to convey the water to the land. The use of the water for agricultural purposes is the end in view; reservoirs, canals and ditches are merely the means or instrumentalities whereby the appropriator applies the water to the irrigation of agricultural land, that being the purpose for which he appropriated the water. Within the meaning of the constitutional provisions quoted above, there is no such thing as a ''reservoir purpose,'' a ''storage purpose,'' a ''canal purpose,'' or a ''ditch purpose.''

When the predecessors of the Reservoir Company made their appropriation, they did so knowing that the Constitution expressly made their rights subordinate to the rights of prior appropriators. When later appropriators appeared, they had full knowledge of the existence of the prior appropriations, including the appropriation made by the predecessors of the Reservoir Company. They went upon the stream with their eyes open. They ran the risk, which all subsequent appropriators run, of having their supply diminished if, by reason of an insufficient supply of water, there is little left after the lawful requirements of prior appropriators have been satisfied.

4. It is suggested that, as the relator is a corporation, its rights as such are limited by section 2355 of Compiled Laws of 1921 to storage of water ''when not needed for immediate use.'' That provision is capable of the construction given in this opinion to the provision in the Act of 1879. That the purpose of section 2355 is to permit reservoir corporations to store water of which it has not made an appropriation—water already appropriated by others, but not then needed for immediate use—is made

clear by the concluding words of the section: "but this shall not be construed to prevent the *appropriation* and use of any water not theretofore utilized and applied to beneficial uses." The act, of which section 2355 is a part, relates to corporations organized for the purpose of *constructing* ditches, *reservoirs, etc.* C. L. 1921, section 2353.) The relator corporation was not organized to construct, nor did it construct, a reservoir. The reservoir had already been constructed by landowners, who had made a valid appropriation of water for irrigation purposes, and who organized the corporation as a *mutual* reservoir company to take over the reservoir and their appropriations solely for their benefit. Mutual reservoir companies are organized, not for profit, but for the convenience of their members in the management of the irrigation system and in the distribution to them of water upon their lands in proportion to their interests. Ownership of the shares of stock therein is but incidental to ownership of the water right. *Ireton v. Idaho Irrigation Co.,* 30 Idaho 310, 317, 164 Pac. 687; *Kendrick v. Twin Lakes Reservoir Co.,* 58 Colo. 281, 144 Pac. 884. And see concurring opinion in *Comstock v. Olney Springs Drainage District,* 97 Colo. 416, 50 P. (2d) 531, in which the majority of the justices joined.

5. In the dissenting opinion in *Fort Morgan Reservoir & I. Co. v. McCune,* 71 Colo. 256, 272, 206 Pac. 393, is the following statement of the place that storage rightly occupies in the agricultural development of the state: "* * * the future of the state rests largely upon agricultural development, and this in turn upon irrigation by storage. The waters of the state have been so generally appropriated that the day of direct irrigation enterprises is closing, while that of storage has scarcely more than dawned."

If the appropriators of water *for the purpose of agriculture* who, with a view to the economical and effective use of the water, resort to storage in reservoirs constructed at great expense, may be deprived of their pri-

orities by those who later—it may be many years later—make appropriations of water *for the same purpose,* but who employ the less economical and less effective method of irrigation by means of ditches only, then, truly, for storage enterprises the sun is not a rising, but a setting, sun.

6. I conclude:

1. That the provision of the Act of 1879 (C. L. 1921, section 1682) does not mean what the defendants in error claim it does;

2. That if it does mean that, it is clearly inconsistent with the Acts of 1881 and 1887, supra, and therefore has been repealed thereby by implication;

3. That if the provision means what the defendants in error claim it does, and if it has not been repealed by implication, it is unconstitutional and therefore void;

4. That section 2355 of Compiled Laws of 1921, relating to reservoir corporations, does not limit the powers of the relator in the manner claimed by the defendants in error; and

5. That, for the reasons stated above and in the principal opinion, the judgment is properly reversed.