No. 14,620.

HALL *v.* HALL.
(97 P. [2d] 415)

Decided November 13, 1939.   Rehearing denied December 18, 1939.

Mr. ALBERT J. GOULD, for plaintiff in error.

Mr. OMAR E. GARWOOD, Mr. MILTON C. GARWOOD, for defendant in error.

*In Department.*

·MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS controversy involves the extent of the exercise of judicial authority to cancel and set aside a property settlement and trust agreement entered into between husband and wife, in connection with and growing out of divorce proceedings. December 28, 1931, defendant in error, hereinafter designated as plaintiff, filed complaint in divorce against plaintiff in error, to whom we hereinafter refer as defendant, praying for a decree of absolute divorce. December 29, 1931, defendant filed her answer and cross complaint alleging cruelty, and also praying for a decree of absolute divorce. March 4, 1932, the court entered its findings of fact and conclusions of law in favor of defendant, paragraph 4 thereof reading as follows: "That the plaintiff and defendant have entered into a property settlement agreement, which has been exhibited to the Court and which the Court finds to be fair and equitable." The mentioned agreement was executed by the parties the day preceding the entry of the court's findings, the portions thereof

pertinent to the controversy herein being as follows:

"Whereas, the parties hereto are husband and wife and certain irreconcilable differences have arisen between the parties hereto making it absolutely impossible for them to live together and said parties have determined that it is to their best interests that they live separate and apart from each other, and that they by the terms thereof, determine, settle and adjust forever all property rights arising out of said marriage;

\* \* \*

"1. Said husband shall and simultaneously with the execution hereof has created a trust for the benefit of said wife to become operative on February 7, 1934, when said husband becomes twenty-five (25) years of age. A copy of said trust agreement with the Worcester Bank & Trust Company of Worcester, Massachusetts, as trustee, is attached hereto and marked Exhibit 'A'.

\* \* \*

"8. The wife in consideration of the premises, and of the mutual covenants herein contained hereby waives, releases, foregoes, and disclaims all her rights in any and all property, both real, personal and mixed wheresoever situate, of which her husband is or may become seized or possessed, and hereby expressly waives all right to inherit from said husband under the laws of any and all states of the United States and foreign countries, and hereby agrees that husband shall have the right to dispose of his property of any kind by will, and in case husband fails to dispose of this property of any kind by will, then said property shall descend to his legal heirs other than wife, and she shall not inherit anything from him.

"9. The wife further agrees that until such time as no further payments are being made to her by virtue of this agreement, she shall inform husband of her address, and further promises and agrees that immediately upon her remarriage she shall inform both husband and the Worcester Bank & Trust Company of that fact."

The same date plaintiff entered into a trust agreement (exhibit A) with the Worcester Bank & Trust Company, of Worcester, Massachusetts, in which plaintiff is donor, the trust company is trustee and defendant is donee, the pertinent parts thereof reading as follows:

"This Agreement made in triplicate this 3rd day of March in the year one thousand nine hundred and thirty-two, by and between George N. Hall, of the City and County of Denver, State of Colorado (hereinafter called the 'Donor'), party of the first part, and Worcester Bank & Trust Company, a corporation organized and existing under and by virtue of the laws of the state of Massachusetts and having its principal place of business in Worcester, Massachusetts (hereinafter called the 'Trustee'), party of the second part,

"Witnesseth: Whereas, by the last will and testament of Judson W. Hall of Worcester, Massachusetts, the rest, residue and remainder of his property after certain specific legacies and bequests was left to the Trustee (then Worcester Trust Company) in trust for the uses and purposes therein set forth; and

"Whereas by the terms of said trust the Trustee was directed to pay over to the Donor certain of the income therefrom, and was further directed to pay over to the Donor when he should have reached the age of twenty-five years one-half of the balance then remaining in the hands of the Trustee; and

"Whereas Donor, if then living, will attain the age of twenty-five years on the 7th day of February, 1934;

"Now Therefore, in consideration of the covenants of the Trustee herein contained and of certain other and valuable considerations not herein recited, the Donor hereby directs the Trustee upon the 7th day of February, 1934 (providing the Donor shall be alive on that date), to turn over to itself as Trustee under this agreement whatever balance in its hands as Trustee under the last will and testament of Judson W. Hall aforesaid shall upon that date pass to the Donor by the terms of

the said last will and testament of Judson W. Hall. The securities and assets forming said balance determined as of that date shall be listed and on such date attached to this agreement marked 'Exhibit A.'

"Said assets and securities and all other property hereafter delivered to the Trustee hereunder shall be held by the Trustee in trust nevertheless for the following uses and purposes, that is to say:

"To hold, manage, invest and reinvest the same and to collect and receive the income, rents, issues and profits thereof during the life of the Donor and, after paying therefrom the commissions of the Trustee and all other expenses incidental to the management of the trust estate, during that period of time to pay or apply the net income, rents, issues and profits thereof as follows in quarterly installments:

"1. The sum of four hundred and fifty dollars ($450.00) of each installment shall first be deducted and paid to Irene Hall, at present the wife of the Donor.

"It is understood that the said Irene Hall is about to obtain a divorce from the Donor and the above sum of $450.00 per quarter shall be paid to her during her life provided that if at any time in the future she shall remarry, the Trustee shall cease paying to her the said sum of $450.00 per quarter and shall thereafter pay the entire aforesaid income, rents, issues and profits to Donor during the life of this agreement.

"Upon the death or remarriage of Irene Hall, her right to receive any payment of any kind from this trust shall cease and her heirs, devisees, legatees and assigns shall take nothing herefrom.

"2. The balance of said income, rents, issues and profits shall be paid to the Donor during the life of this agreement.

"This agreement, however, is upon and subject to the limitation: That at any time during his life or by his last will and testament, the Donor may by notice to the Trustee of ten (10) days in writing executed by him

under his hand and seal, from time to time withdraw from the hands of the Trustee assets and securities then in its hands and forming the principal of this trust fund; provided however that the Trustee shall be required until the death or remarriage of Irene Hall to keep in its hands and forming principal of the trust fund income producing assets and securities of the value of thirty-seven thousand five hundred dollars ($37,500.00), such value to be taken as of the date of withdrawal by Donor. Upon the death or remarriage of Irene Hall, Donor shall have the power to revoke this agreement.

"Donor shall further have the power to modify or change any of the terms of this agreement, providing that the rights of Irene Hall, as hereinbefore set forth, shall be preserved intact, and shall in no wise be modified or changed.

"Upon the death of the Donor in the lifetime of Irene Hall and before her remarriage, the Trustee shall continue to make payments to her as heretofore provided until such time as she dies or remarries.

"The income remaining shall be disposed of by the Trustee in accordance with the terms of the last will and testament of the Donor, or if he shall leave no last will and testament shall become vested in his heirs. Upon the death or remarriage of Irene Hall subsequent to the death of the Donor, this agreement shall cease and terminate and the Trustee shall at such time pay over the principal remaining in its hands as directed by the last will and testament of the Donor; or in the event he shall have left no last will and testament to his heirs."

September 26, 1932, the court entered its final decree of divorce, the last paragraph of which is as follows: "And it is Further Ordered, Adjudged and Decreed by the Court that this Court retains jurisdiction of the subject matter of this action and the parties thereto for the purpose of enforcing the property settlement agreement and any and all the terms thereof heretofore en-

tered into between the plaintiff and defendant and referred to in the findings of fact and conclusions of law heretofore entered herein."

December 6, 1938, plaintiff filed his petition for cancellation of the agreement and modification of the decree, which is the basis of the present controversy. In so far as the property settlement is concerned, only the trust agreement remains, disposition having been made of the other property. June 7, 1939, the court entered its findings and modified decree, which in part is as follows: "Wherefore, It Is Ordered, Adjudged and Decreed by the Court that the issues herein joined be and they are found and determined in favor of plaintiff and against the defendant; that the said property settlement dated February 26, 1932, between plaintiff and defendant be, and the same hereby is, set aside and cancelled; that the decree herein dated September 26, 1932, be and it is hereby modified in the following respects, to-wit: That from and after this date the plaintiff shall pay for the support and maintenance of the defendant whether she marries or not the sum of $75.00 per month for a period of ten years, in the same manner as payments have heretofore been made for defendant's benefit. That to secure such payments to defendant, the plaintiff shall revise and alter the trust agreement with the Worcester County Bank and Trust Company consistently with the provisions of this decree." To the entry of this decree defendant took exceptions, assigns error and seeks reversal.

Plaintiff has, since entry of final decree on September 26, 1932, been twice married and twice divorced. At the time of the hearing he was unmarried. Defendant never has remarried.

Defendant's assignments of error, for the purposes of our discussion, may be comprehended in the following three grounds: (1) That the action should have been dismissed because the court was without jurisdiction, the trustee named in the trust agreement not being made

a party, although it was a necessary and an indispensable party thereto; (2) that the trust agreement cannot be set aside; (3) that a failure to comply with the terms of the agreement may not be excused except in the event of impossibility of performance.

Counsel for defendant contends that the trustee of an express trust is a necessary and indispensable party, in a proceeding to cancel a trust agreement. Asserting that to hold otherwise would be contrary to all legal precedent, he calls attention to certain language of the Supreme Court of the United States, quoted and approved by us in *Grater v. Logan High School,* 64 Colo. 600, 602, 173 Pac. 714, as follows: " 'The rule in equity as to parties defendant is, that all whose interest will be affected by the decree sought to be obtained, must be before the court, and if any such persons cannot be reached by process, the bill must be dismissed'."

It is apparent that the trust company is not a party to this litigation and cannot be reached by process. Whether it is a necessary party depends, in a measure, upon the relief sought. The donor and donee of the trust are parties, and for the purpose of enforcement are subject to all the coercive equity powers of the court. It is true that the trust company is not directly bound by any of the orders of the court herein. Counsel for plaintiff contend that this is not a proceeding to cancel the trust agreement, but that is exactly what they asked the court to do and what it did. True, they also asked that the decree of September 26, 1932, be modified, which the court also did. This, under certain circumstances, it may have the power to do. However, in view of our conclusions, we deem it unnecessary to determine this question.

Is this, under the circumstances, such a property settlement or trust agreement as the court may order cancelled? Counsel for plaintiff cite numerous cases authorizing courts to modify decrees providing for the payment of alimony. Alimony is nowhere mentioned in

the present decree, in the property settlement, or in the trust agreement.

■ In the case of *Stevens v. Stevens*, 31 Colo. 188, 72 Pac. 1060, we for the first time decided (Mr. Justice Steele dissenting) that the court has continuing jurisdiction over the payment of alimony. We have adhered to this ruling in a number of cases, and it may be assumed as the settled law of this state. *Prewitt v. Prewitt*, 52 Colo. 522, 122 Pac. 766; *Jewel v. Jewel*, 71 Colo. 470, 207 Pac. 991; *Diegel v. Diegel*, 73 Colo. 330, 215 Pac. 143; *Huff v. Huff*, 77 Colo. 15, 234 Pac. 167; *Low v. Low*, 79 Colo. 408, 246 Pac. 266; *Weydeveld v. Weydeveld*, 100 Colo. 301, 67 P. (2d) 72; *Canary v. Canary*, 89 Colo. 483, 3 P. (2d) 802; *Rodgers v. Rodgers*, 102 Colo. 94, 76 P. (2d) 1104. We never have held that a property settlement agreement, and especially a trust agreement, such as that before us, may be cancelled and set aside.

■ In *Low v. Low, supra*, we had under consideration an agreement of the parties providing for the payment of $150 per month as alimony, and the decree awarded that sum to the wife. One of the questions raised was that the award by the court of alimony, being based upon an agreement of the parties, which was as well a settlement of their property rights, could not be modified to the injury of the wife without her consent. The court, in that case, discussed this question pro and con and was inclined to the view that the general trend of decisions, as to the power of the court to modify alimony decrees, seemed to be against the contention of the wife, but deemed it unnecessary to pass upon the question. It should be pointed out that in that case the only provision in the decree was an award of alimony in the sum of $150 per month. No award of alimony was made in the instant case. The only reference to the agreement is a provision for the enforcement of all its terms, in conformity with sections 5 and 6, chapter 72, S. L. '33. *Titus v. Titus*, 96 Colo. 191, 41 P. (2d) 244. It provides for enforcement, not for modification or repudiation.

There being no provision for alimony, as such, in the decree, there was no basis for modification. To accept the contention of plaintiff here would mean that under no circumstances can the wife be assured of contractual security. Factors over which she has no control would be permitted to disturb this security. That it was the intention of the parties that the trust agreement was final and not subject to cancellation by the court is clear from the terms of the instrument. It expressly provides that so far as the rights of defendant were concerned it should "in no wise be modified or changed." There is no contention that the agreement for any reason is void.

In *Canary v. Canary, supra,* a case upon which plaintiff's counsel place great reliance, we had before us a petition for modification of a judgment for permanent alimony. While the divorce was pending the parties entered into a contract settling their property rights. The contract was incorporated in the final decree and its terms, expressly providing for alimony, became the judgment of the court. The application for modification had been dismissed by the trial court, because it contained no allegation of fraud, mistake, overreaching, unfairness or inequity which were held to be essential in a case where, with full knowledge and open eyes, the parties had fixed their rights by a contract incorporated in the decree. We reversed the trial court in this ruling and said that it had jurisdiction to modify in that case, especially since it was claimed that it was absolutely and physically impossible for defendant to continue making the payments for which provision was made by the decree. This case would seem to have settled the question left open in *Low v. Low, supra.* In sustaining the jurisdiction of the trial court to hear such an application, and charging it with the duty, in a proper case, to grant it, we cited the following authorities: *Prewitt v. Prewitt, supra; Jewel v. Jewel, supra; Warren v. Warren,* 116 Minn. 458, 133 N. W. 1009, and *Lewis v. Lewis,* 53 Nev.

398, 2 P. (2d) 131. These cases, however, do not sustain the contentions of plaintiff in the instant case.

Prewitt v. Prewitt related only to the modification of a decree for alimony. Jewel v. Jewel was an action by a divorced wife for additional alimony in an independent suit, and has no application to the facts here. In Lewis v. Lewis the alimony was based upon an agreement, which agreement was incorporated in and made a part of the decree, and it expressly provided that if the income of the defendant fell below a certain amount per year defendant would have a right to apply for a reduction of the alimony to a sum equal to one-fourth of his annual income; and the court reserved in the decree the right to make such further or additional orders relative to the payments to be made to plaintiff for her support as it in the future might deem proper. In Warren v. Warren, the original judgment for alimony was based upon a stipulation of the parties entered into pending the action. It was sought to have the alimony reduced from $60 to $40 per month. The wife contended that the judgment became a contract between the parties and was not subject to change by the court except upon restoration of the wife to her former position. The main question at issue was whether or not this contract was void as against public policy. The court held that it was not and that it had statutory authority to modify the decree, notwithstanding the fact that the judgment for alimony was based upon a stipulation of the parties.

In every one of the cases cited there was a judgment and decree for a specific amount of alimony, and under the rule announced in *Stevens v. Stevens, supra,* the court retains continuing jurisdiction over that phase of divorce cases. We have no such factual situation here.

We shall not repeat the provisions of the property settlement and the trust agreements. As before stated, no reference whatever is made to the payment of any alimony. It was a complete and final settlement. In

support of this proposition we quote from Schouler on Marriage, Divorce, Separation, 6th ed., section 1829:

"The court cannot modify a decree entered by consent of all parties as to alimony, or based on contract, and an allowance based on agreement may not be regarded as 'alimony' subject to change by the court, but it has been held that a statute authorizing the court to modify alimony will apply to a decree based on a property settlement.

"Where alimony is settled by agreement between the parties the court cannot amend a judgment which does not provide for alimony so as to include it and then strike it out on remarriage of the wife.

"A decree for alimony may, however, be modified when based on a stipulation procured by fraud."

Also section 1870: "Where parties on divorce make an agreement as to disposition of property it cannot be repudiated, but the agreement should be incorporated in the decree to be binding."

We also quote from 17 Am. Jur. 493, Divorce and Separation, section 647, together with a portion of section 649, as follows:

§647. "It seems to be well settled, apart from statutory considerations, that when alimony is in issue and is omitted from the decree, it cannot thereafter be inserted, at least in the absence of fraud or mistake. It has been generally, though not invariably, held that statutes permitting modifications or changes as to alimony do not apply where no alimony has been granted in the decree."

§649. "Notwithstanding the court has power and authority to modify its decree of divorce touching the allowance of a sum of money for the maintenance of the wife, she and her husband may agree in a proper case touching the amount of such sum and the manner of its payment, subject to the approval of the court as to its validity in good morals and as conformable to public policy, and in further consideration of the status and

condition of the parties relating to the question of its fairness and equibility of adjustment. According to the weight of authority, such a contract, where approved by the solemn decree of the court, becomes forever binding to the same degree and with like effect as ordinary contracts between parties admittedly sui juris and is not subject to revocation or modification, except by the consent of the parties thereto. * * * On the other hand, the court cannot alter or modify the decree in so far as it is based on the contract of the parties, for such a modification of the decree would be no less than a modification of the contract itself. * * *." See, also, 19 C. J. 251, section 586 (5), and page 340, section 787.

We think that the trust agreement involved herein is such a property settlement of the parties as is binding upon them. The cancellation of the trust agreement, under the circumstances here, was an invasion of the contractual rights of defendant and an arbitrary exercise of judicial power. No fraud, collusion, duress or mistake is claimed in the execution of this agreement. A different question would be before us if, in the instant case, the court, on its own responsibility, or by agreement of the parties, had decreed a specific amount of alimony, but no such situation is presented. In cancelling and setting aside the trust agreement the court committed error.

Did plaintiff make such a showing of impossibility of performance as would excuse him from further compliance with the trust agreement? It is asserted that the case of *Canary v. Canary, supra,* is authority in this state for the cancellation of such an agreement. We have already commented on that case; its purport must be limited to the direct question decided. The husband asserted an absolute and physical impossibility of performance, and we said that this would be a proper issue to be determined by the trial court. Is there such an issue involved here? We think not.

At the time of the execution of the trust agree-

ment there were securities in the amount of approximately $90,000 deposited with the trustee. These securities were, under the terms of the trust agreement, withdrawn by plaintiff and reduced to approximately $50,000 in value at the time of·the hearing. The trial court found that plaintiff had the right to reduce the securities by further withdrawing from the same so as to leave a balance in the sum of $37,500. His weekly earnings are $30, and there is no evidence that this sum is not sufficient for his support. Neither is there any showing which would justify a finding that there is an impossibility of performance on the part of plaintiff under the terms of the agreement. Plaintiff failed to show any impossibility or inability of performance which would excuse him from further compliance with the trust agreement. The trust agreement is self-operative.

Plaintiff asserts that defendant did not keep him informed of her address. It is not clear whether that is claimed as a ground for modification. We point out that not residence but address is involved. The trial court did not base its cancellation of the agreement on this alleged breach. Twice theretofore plaintiff sought similar relief against defendant, by counsel other than those who appear in the instant case. In neither of those instances was there any complaint that he did not know his wife's address. Moreover, it may be assumed that the trustee, which is required to mail the quarterly checks to defendant, was in possession of her address, and all that would have been necessary, if in fact there was such a breach, would have been to notify the trustee to make no further payments until it had been informed of her then address. Defendant claims that this provision was waived by the acts·of plaintiff. Be that as it may, this is purely a collateral issue and is not determinative of the question of cancellation and modification.

Plaintiff also submitted some evidence of misconduct on the part of defendant, particularly that she obtained

no employment and was living in idleness. After defendant produced medical evidence to show that she had been in ill health and was unable to work, the court appointed a medical expert to examine her condition, who corroborated her testimony in every respect. Under our view of the legal principles involved herein, that issue was not material. Other questions have been raised which we do not deem necessary to consider.

The judgment is reversed and the case remanded with directions to dismiss the petition.

Mr. Justice Hilliard concurs.

Mr. Justice Francis E. Bouck concurs specially.

The following specially concurring opinion was filed December 18, 1939.

Mr. Justice Francis E. Bouck specially concurring.

I concur in the conclusion, but solely on the ground that the district court's attempted modification herein of its original decree could not properly be made in view of the uncontradicted facts presented by the record, to which there will be more specific reference hereinafter.

It is impossible for me to agree with the statements in the court opinion that the decree provision based upon the so-called property settlement agreement of March 3, 1932, does not involve alimony, and that the agreement is inviolate so as forever to deprive the district court of the usual inherent power of Colorado divorce tribunals to modify their decrees in regard to permanent alimony; a power expressly recognized by this court in numerous cases. See *Huff v. Huff,* 77 Colo. 15, 234 Pac. 167.

The settlement agreement and related formal documents were incorporated verbatim in the interlocutory decree for the obvious purpose of providing for the support and maintenance of the wife thereafter, that is, for *alimony,* whether this term is used or not. The agree-

ment provided for securing the quarterly payment to the wife of $450, beginning February 7, 1934, out of the income of a trust fund which had been established in the husband's favor by his grandfather's last will and testament, under which the corresponding portion of the principal would, in the absence of the agreement, have been payable absolutely to the husband on the day mentioned, when he attained the age of twenty-five years. The agreement also provided that "in order to provide *support money* for said wife until February 7, 1934 [namely during the period when the husband was not entitled to the principal as such], said husband simultaneously herewith has executed an assignment" of $3500 out of the original trust income, which during this preliminary period was the extent of the husband's entire interest in the fund. Evidently because of the possibility of the husband's premature death he provided the additional but merely temporary security of a $30,000 life insurance policy which was to be kept in force for her benefit until the permanent arrangement should become effective on February 7, 1934.

The wife, in her cross complaint, had prayed for "temporary and permanent *support money*" of $250 per month. *The incorporation of the above described provisions in the original decree was thus for all purposes the allowance of alimony.* The decree therefore did not differ in principle from the simple type of a decree for alimony with such security as seems reasonable to the trial court at the time of entering the decree. The court automatically retains power to modify the decree, however, according to the changed circumstances of the parties. It cannot deprive itself of this power. See '35 C. S. A., c. 56, §8, and annotations and citations found in connection therewith.

As I view it, the record before us presents a single question, namely, Do the facts justify the modification here made by the lower court? The answer depends

upon the showing made concerning the former wife's need and concerning the former husband's ability.

As regards the need of the former wife, her condition and station in life have not been proved to have substantially changed so as to require less than the sums originally stipulated by the parties, averaging $150 per month. As regards the ability of the former husband, his inability to earn the aforesaid sums is not involved, inasmuch as their payment was and still is secured by the trust arrangement referred to in the court's opinion, and his own testimony reveals that he is earning about $130 a month, not shown to be insufficient for his own present support.

Where a formal alimony arrangement has been made by the parties, a court should not lightly change the resulting alimony provisions in the decree. Under the evidence before us, interpreted most favorably to the former husband, it would be in my opinion inequitable to make any change in the original decree at this time.

For the reasons given, I concur in the judgment of this court, reversing the judgment of the district court with directions to dismiss the petition of the defendant in error.