No. 16,002.

FIFER *v.* FIFER.
(202 P. [2d] 945)

Decided January 24, 1949.

Mr. A. L. Betke, Mr. George H. Lerg, for plaintiff in error.

Mr. Frank P. Lynch, Jr., for defendant in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

### Analysis of Facts.

Plaintiff in error was defendant in the trial court in an action for divorce. We will herein refer to the parties as they appeared in the trial court. The facts are substantially as follows:

An interlocutory decree of divorce in favor of the plaintiff was signed on June 24, 1938, and provided among other things as follows: "The defendant shall pay to the Home Owners Loan Corporation upon a note and deed of trust against the property now owned by the parties hereto, the sum of $40.00 per month until the payments on the said note and deed of trust which are in arrears shall have been paid. Thereafter the defendant shall pay to the said Home Owners Loan Corporation the sum of $28.91 per month, and the additional sum of $6.09 shall be paid into the registry of the court as alimony for the plaintiff herein."

December 27, 1938, a formal final decree of divorce was entered "upon the terms and conditions contained in the interlocutory decree."

On February 7, 1947, the plaintiff filed a petition requesting the issuance of citation to defendant for contempt of court. The citation was issued and a hearing held thereon on the 11th day of February, 1947. As of the date of the hearing the evidence disclosed that the sum of $177.80 was due to the Home Owners Loan Corporation upon the indebtedness referred to in the interlocutory decree, and foreclosure of the deed of trust securing said indebtedness was threatened. It further appeared that between the date of the interlocutory decree and the date of the hearing on the citation, two separate adjustments of delinquencies had been made with the Home Owners Loan Corporation, and extension agreements enlarging the time and modifying the payments had been entered into between the Home Owners Loan Corporation upon the one hand and the plaintiff and defendant as the makers of the note upon the other.

The defendant testified in substance that, due to an incurable chronic eczema, he had been retired from his employment with Swift & Company on September 1, 1946, and that his sole income since that date had been twenty dollars a month as a retirement pension. The defendant contended that, under the terms of agreements with the plaintiff, she was obligated to pay the taxes assessed upon the real estate pledged as security for the payment of the Home Owners Loan Corporation loan. He contended that plaintiff had failed to pay these taxes and that as payments were made by him to the Home Owners Loan Corporation deductions were made totalling approximately $700.00 which would otherwise have been credited to principal if plaintiff had performed her agreement to pay taxes. The plaintiff admitted that in the first agreement she was to pay the taxes, but contended that thereafter the agreement was changed so that the defendant was to pay a lesser sum

to the Home Owners Loan Corporation than was first provided, but the taxes were thereafter to be assumed by him.

The evidence offered for the consideration of the court upon the question of these agreements between the parties was unsatisfactory and prompted the court to suggest:

"The Court: The situation, as far as the court sees it at present, with reference to the house, is somewhat of an emergency, and, I think, beyond the control of both parties, namely, a notice from the government that unless a certain sum of money is paid the property will be foreclosed and taken away from both of them. The defendant has stated to the court, under oath, that he understood the orders to be that he was to pay a certain amount of money each month to the Home Owners Loan Corporation, and that he has not paid anything since July. Regardless of what his lawyers think he should have done, or whether an accounting might show what is due from him, or should be credited to him, that is his statement to the court,—that he understood he owed so much and that he has not paid it.

The order will be that defendant will pay forthwith the sum of $177.80 to the Home Owners Loan Corporation, pursuant to the notice, and that thereafter, if counsel wish the court to settle the matter, the whole thing can be gone into from the start, without being under pressure from any emergency of foreclosure, and perhaps we can work it out in some way, giving him credit for what he should not have paid, and requiring Mrs. Fifer to do what she should do. I am taking his own statement that he thought he was under order to pay so much money, and he has not done so."

Following this statement by the court the defendant stated that he thought he could raise the money and he said: "I'll do the best I can."

The formal order in connection with said hearing is in the following language: "It is ordered by the court

that the defendant pay all taxes due on the family home forthwith, and that this cause be, and the same hereby is, continued for further hearing to a future date." No day certain was fixed for any further hearing and in so far as the record discloses, no judgment nor other order was entered by the court upon the issue of contempt of court except as above stated.

Following the entry of the foregoing order and on the same day, to wit, February 11, 1947, the defendant filed his motion objecting to the enforcement of the said order, asking that it be vacated, modified, or amended, and sought an order of court cancelling a property settlement agreement between plaintiff and defendant and directing the sale of the property "in the interest of both parties." No action was taken by the defendant to secure a hearing upon this motion, and no further action was taken by either party until the 19th day of September, 1947, at which time plaintiff filed a petition seeking relief in the form of a conveyance to herself of the interest of defendant in the real estate. An answer to this petition seems to have been filed one day prior to the actual filing of the petition itself, and immediately and on the same day, to wit, September 19, an amended petition was filed by plaintiff to which defendant filed an answer.

In the amended petition, plaintiff alleged that at the time of the entry of the interlocutory decree on the 24th day of June, 1938, an agreement was made between plaintiff and defendant under the terms of which the plaintiff was to pay taxes upon the real estate, and defendant, under said agreement was to be wholly responsible for discharging the indebtedness held against the property by the Home Owners Loan Corporation. It was further alleged in the petition that after the entry of the interlocutory decree, two separate extension agreements were made with the Home Owners Loan Corporation in which existing delinquencies were adjusted, and that under the terms of the latter extension

agreement, dated June 16, 1943, the payments required of the defendant were reduced to $17.32 a month and defendant was to assume responsibility for the payment of taxes, in consideration of which plaintiff waived the payments for which provision was made under the terms of the interlocutory decree. The petitioner further alleged noncompliance on the part of the defendant with this agreement since April, 1947, as well as his failure to pay the monies ordered at the time of the hearing on the citation for contempt. Plaintiff further alleged that defendant has left the jurisdiction of the court and has moved outside the State of Colorado.

The prayer of the petition is, that the court order the defendant to cure the defaults existing in connection with the Home Owners Loan Corporation loan within a specified time, or for an order directing him, or a master on his behalf, to convey his interest in the real estate involved to plaintiff.

The defendant filed his answer to this petition admitting the obligations which plaintiff alleged rested upon him under the the original agreement between the parties. He contended that he was not bound by the terms of the interlocutory decree because the obligations resting upon him thereunder were "waived, abrogated and rescinded" by the subsequent agreements of the parties. He alleged that he had never been in default on the Home Owners Loan Corporation loan, for the reason that the sum of $640.43 paid by him was credited by the Home Owners Loan Corporation upon the tax account which should have been paid by the plaintiff herself, and that if said sum had been credited to principal there would have been no default. The defendant further contended that the payment of the note to the Home Owners Loan Corporation being fully secured by deed of trust, and being an obligation due and owing to a third party, cannot be enforced by proceedings in contempt, or otherwise, in the divorce action; that the court is without authority or jurisdiction to proceed concern-

ing payments ordered in the decree, and that the court is without authority to order defendant to convey his interest in the property to the plaintiff; that the court has lost jurisdiction to proceed by reason of the fact that "many terms of court have passed since said decree has been entered."

The cause was set for hearing upon the issues framed by the amended petition and defendant's answer thereto. Defendant appeared by counsel only. The plaintiff appeared personally and by attorney, and upon the hearing the evidence disclosed that the Home Owners Loan Corporation had instituted foreclosure proceedings upon the deed of trust securing its loan. It was further established that the payment ordered upon the contempt hearing on February 11, 1947, had not been made by defendant. The two extension agreements made with the Home Owners Loan Corporation were admitted in evidence and plaintiff testified that as an inducement to her to sign the extension agreements defendant promised and agreed to pay the taxes assessed against the property.

The Court made the following order :

"1. The defendant, within thirty days, shall either redeem in full the property involved here from the foreclosure proceeding and restore the title to the condition it was prior to that, so far as the foreclosure is concerned, or

"2. Convey to the plaintiff, by proper deed, his interest in the real estate.

"At the expiration of the thirty days, if he has not done either one of these two things, then the Court will appoint the Clerk of the Court as commissioner or master, whichever he should be designated, and he shall execute and deliver to the plaintiff a conveyance of the defendant's interest in said real estate, conveying it to the plaintiff."

After the expiration of thirty days from the entry of the foregoing order the defendant not having redeemed

from the foreclosure proceeding, the court ordered, "that the final decree of divorce heretofore entered in this court be modified and the court does hereby award to the plaintiff herein as alimony, all the right, title and interest of the said defendant" in and to the real estate subject to the encumbrance held by the Home Owners Loan Corporation. The Court further appointed the Clerk of the District Court as master and directed him to convey the said property to the plaintiff on behalf of the defendant, pursuant to the court order.

*Questions Presented for Determination.*

First: *Was the proceeding, resulting in the judgment appealed from, a proceeding in contempt in which the court was without power to enforce the payment of a debt to a third party?*

This question must be answered in the negative. The amended petition and the answer thereto framed the issues upon which the judgment of the court was asked. There was no final judgment upon the contempt citation heard on February 11, 1947. The court in disposing of the contempt citation on that date expressly provided that the matter should stand continued, but neither party to the action thereafter saw fit to proceed further upon said citation. It cannot be successfully contended that the amended petition of plaintiff, seeking a modification of the terms of the decree of divorce relating to property and alimony, was a contempt proceeding.

Counsel for defendant assumes that the judgment appealed from was entered in a "contempt proceeding." After making this assumption they urge that in such a proceeding the court was without power to enforce the payments to the Home Owners Loan Corporation because it was a third party holding a debt against the plaintiff and defendant. Authorities from other jurisdictions are cited by counsel for defendant to sustain this contention. However, in view of the fact that the judgment in this cause was entered upon an application

for a modification of orders relating to property and alimony in the divorce action, and cannot be considered as a proceeding involving contempt of court, it is not necessary for us to give further consideration to the question of enforcement through contempt proceedings of the payment of a debt to a third person. Such a question is not involved in this record.

■ Second: *Did the court have power by decree to divest defendant of his interest as a joint tenant in real estate, and vest the title thereto in the plaintiff?*

This question must be answered in the affirmative. The decree of divorce contained orders for the payment of alimony. Under the circumstances disclosed by this record all money payments ordered to be made by defendant were properly regarded as payments of alimony. The petition of the plaintiff, upon which the court entered judgment, was in substance a petition for a modification of orders relating to alimony. There is nothing in the divorce decree to indicate that the order relating to alimony was based upon an agreement of the parties. No agreement of the parties was incorporated in, or made a part of, the decree of divorce. There was no application for a change in the court order by either party until the plaintiff's petition for modification was filed in September, 1947. While a reference is made to a property settlement in the answer of defendant, no alleged property settlement was identified, offered or admitted in evidence.

In the case of *Hall v. Hall,* 105 Colo. 227, 97 P. (2d) 415, we stated that the court has continuing jurisdiction over the payment of alimony. There is nothing in this record which serves to remove this cause from the application of that generally accepted rule.

In the case of *Rodgers v. Rodgers,* 102 Colo. 94, 76 P. (2d) 1104, we stated: "It is settled law that awarding alimony and fixing the amount thereof rests in the sound discretion of the trial court, and, unless it is made to

appear that there has been an abuse of discretion, its judgment will not be disturbed."

In the case of *Van Gorder v. Van Gorder*, 54 Colo. 57, 129 Pac. 226, permanent alimony was awarded in the lump sum of $8,000.00, and we upheld the award. The defendant in the instant case insists that, subsequent to the entry of the interlocutory decree, he became wholly unable to comply with the orders which the court made concerning alimony for the plaintiff. Under the facts disclosed by the record it was within the sound discretion of the court to modify the decree and to order a conveyance of the interest of defendant in the real estate to plaintiff. We cannot say that such action by the trial court amounted to an abuse of its discretion.

Third: *Did the court err in finding against the defendant upon his contention that the plaintiff failed to pay the taxes assessed against the property, and that this alleged failure was the real cause of the default in payments to the Home Owners Loan Corporation?*

■ ■ This question must be answered in the negative. At the hearing on the citation for contempt of court held on the 11th day of February, 1947, there was evidence that plaintiff and defendant, in negotiations between themselves, had "agreed" to modifications in the alimony provisions of the interlocutory decree; however, the alleged agreements were not introduced in evidence nor exhibited to the court at that hearing. The court stated, in considering the testimony concerning the alleged subsequent agreements:

"The Court: When parties take it upon themselves to enter into side agreements modifying court decrees, without getting a court order to modify them, they put the court and themselves in a bad situation. Nobody knows what the agreement is now. Apparently they signed agreements here back and forth two or three times. I do not know what the agreement is. I have not seen any of them. You are looking at papers here, but

they are not in the file. As far as the court is concerned, it can only go to the support order here.

\* \* \*

"\* \* \* The final decree entered in 1938 makes all orders entered before that time still in effect. There is nothing in the record, or files, to show any modification. If you went ahead outside of the court decree, made modification agreements and contracts among yourselves, and then cannot agree on what they mean, it is pretty hard for a court to say what they mean."

Upon the trial of the issues framed upon plaintiff's petition for modification of orders and the defendant's answer thereto, the plaintiff testified that, as an inducement for her to consent to the terms and conditions of the extension agreements made with the Home Owners Loan Corporation, defendant agreed to pay the taxes, and this testimony was not disputed at that hearing. The defendant was not present and offered no evidence. At the hearing upon the citation for contempt, the court, upon continuing the hearing, gave defendant full opportunity to present evidence to the court upon which it might properly determine whether the defendant was entitled to credits which he had not received. The court stated: "If counsel wish the court to settle the matter, the whole thing can be gone into from the start, without being under pressure from any emergency of foreclosure, and perhaps we can work it out in some way, giving him credit for what he should not have paid, and requiring Mrs. Fifer to do what she should do." The defendant did not avail himself at any time of his right, as thus preserved by the court, to secure an adjudication upon the question of the alleged defaults of plaintiff, in the matter of tax payments. The original order for alimony continued thereafter, and defendant must have known that additional arrears under the terms of that order were piling up, yet he took no action to secure relief, and admittedly made no further payments. It is contended by counsel that, "It is shown by defendant's

exhibits 4 and 5 that as of May 23, 1947, there was charged against Fifers' loan account the amount of $640.43 for taxes and insurance." Exhibits 4 and 5 referred to by counsel were attached to the answer of the defendant to plaintiff's petition for modification of orders. They were never identified by any witness, were never admitted in evidence, and the court could not properly consider them as evidence.

Under these circumstances the court did not err in rejecting the contention that the plaintiff was responsible for the foreclosure proceedings.

Fourth: *Did the court err in ordering the transfer of defendant's interest in the property, notwithstanding evidence tending to show defendant's inability to make further payments to the Home Owners Loan Corporation?*

This question must be answered in the negative. It is contended by counsel for defendant that the record discloses that the physical disability of the defendant was of such a nature that it was impossible for him to comply, either with the order of the court as set forth in the interlocutory decree, or with the alleged subsequent agreements made between plaintiff and defendant. No evidence whatever was presented at the hearing upon the petition for modification of orders, concerning the then physical condition of the defendant. It is true that at the hearing on the citation for contempt, the evidence tended to show that since September 1, 1946, defendant was retired from his previous employment of thirty-one years with Swift & Company; that he was suffering from chronic eczema; and that since September 1, 1946, his retirement income was twenty dollars a month; and that he had been unable consistently to work. The defendant and plaintiff were each of the age of 58 years; since the final decree defendant remarried and became the father of two small children. The defendant testified that the "chronic eczema" condition with which he was afflicted, could be "arrested" but not cured. If the

court had been obligated to recall and consider this testimony as applicable to the issues of the subsequent hearing in September, 1947, it would tend to authorize it, in view of the changed circumstances and confessed inability of the defendant to make provision of any kind for the plaintiff on a monthly basis, to modify the original order and provide for plaintiff in the manner set forth in the court's judgment. The trial court, in entering the judgment, amply protected the rights of defendant and gave him an opportunity, within thirty days, to assert his interest as a joint tenant in the real estate in question; defendant did not see fit to avail himself of the protection thus afforded.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE JACKSON concur.