No. 17,452.

FLETCHER M. BROWN *v.* KATHERINE J. BROWN.
(283 P. [2d] 951)

Decided May 2, 1955. Rehearing denied June 6, 1955.

Mr. FRED E. NEEF, Mr. RENDLE MYER, for plaintiff in error.

Messrs. LEWIS, GRANT & DAVIS, Mr. WILLIAM E. DOYLE, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

KATHERINE M. BROWN was awarded a final decree of divorce from Fletcher M. Brown on October 19, 1953, and thereafter, on February 16, 1954, the trial court entered its final decree awarding property and support money. Defendant's objections thereto give rise to the litigation in this Court.

The record discloses that on September 25, 1952, plaintiff began her action for separate maintenance, and on April 14, 1953, by amendment, sought a divorce. On April 16, 1953, an interlocutory decree in plaintiff's favor was entered, and therein it was provided that defendant pay the sum of $750.00 per month into the registry of the court, and specifically that $400.00 thereof was for temporary alimony and $350.00 was to be used for the support of the four minor children of the parties to the action, together with unpaid accounts amounting to $1,600.00 which had accumulated during the preceding three months. In the interlocutory decree it was further provided that the attorneys for plaintiff, as well as those for defendant, should be paid the sum of $1,500.00 as temporary attorney fees, said sums to be paid out of moneys belonging to plaintiff and defendant then being held in escrow, and, further, that the "division of property which is prayed for in the complaint is postponed until the final decree in divorce is entered."

The court, before entering the interlocutory decree, held an extensive hearing, the record comprising more

than 250 folios, to ascertain the financial condition of defendant and the needs of plaintiff and her children. At this hearing defendant testified that he was then receiving $500.00 a month as an officer in an automobile agency; in the calendar year 1952 he received $6,877.27 from certain trusts in which he was named as a beneficiary, and approximately $240.00 from dividends and interest. His gross income in 1952 was $13,117.04. At the time of the hearing he had a total of $9,834.27 on deposit in various banking institutions, and a half interest in the balance in an escrow fund derived from the sale of property owned jointly by plaintiff and defendant. He further testified that he was the owner of a ten year 6% bond in Empire Bowling Corporation, of the face value of $2,000.00, and 150 shares of stock in that corporation of the par value of $10.00 per share, upon which no dividends had been paid; further, that he had $39,500.00 invested in Speed Wrap, Inc. stock upon which no dividends had been paid, and that this was a loss; also that he had invested $65,000.00 in an automobile agency in which he was an officer, drawing a monthly salary of $500.00. He owned miscellaneous mining stocks which represented an investment of $5,000.00, upon which no dividends had been paid; and that there were $600.00 in U. S. defense bonds, Series E, held jointly by himself and his wife.

Defendant also testified that he had purchased a new home for $21,250.00, having paid $8,000.00 thereon, the balance being represented by a promissory note secured by a deed of trust; that he also had an interest in three trust agreements, being the Aspen Block, the Aspen Property Trust, and the D.R.C. Brown Trust. The Aspen Block Trust, in which defendant owned a one-fourth interest, was valued at $95,987.00; in the Aspen Property Trust defendant's interest was appraised at $13,897.52, and in the D.R.C. Brown Trust no value was placed on the property, but defendant's annual income therefrom was $630.00. Defendant owned an automobile which he sold for $3,300.00; he received as a refund on some oil leases

which were cancelled by the U. S. Government the sum of $2,392.00.

Plaintiff testified that she had kept an accurate account of all her expenses from October, 1952, to and including March, 1953, and that, excluding repairs on the newly purchased house, the title to which stood in the names of plaintiff and defendant; these expenses averaged $859.59 per month.

Upon this evidence introduced by plaintiff and defendant, the court made the orders heretofore mentioned as those contained in the interlocutory decree.

The trial court, on December 14, 1953, began a hearing to determine the questions of property division, permanent alimony and maintenance and support for the minor children, at which time the following occurred between court and counsel:

"Mr. Howard: If Your Honor please, I think we would like to withhold our statement as counsel's statement has been somewhat perhaps in the nature of argument, but I would like to make this one observation, that it is my understanding this hearing involves not only the matter of division of the property but also the matter of permanent support for the children and the question as to whether or not the alimony is to be raised.

"Mr. Doyle: I think, if Your Honor please, the Court was fully advised at the last hearing as to his ability to pay, and the burden is on them to show the situation has changed so that they are entitled to some relief from the order entered at that time. That is the position we are going to take.

"Mr. Howard: We will take the position, if Your Honor please, the former orders were temporary support and alimony, which was in accordance with the Court's custom, and we are now here on the question of permanent orders in all respects, which I think is usual after final decree.

"The Court: We did have a rather extensive hearing on temporary orders.

"Mr. Howard: Yes, we did.

"The Court: So I would be inclined to assume those orders were fair, unless circumstances were changed. So the opening and closing, I imagine, would be on the defendant.

\* \* \*

"Mr. Howard: It seems to me, Your Honor, the situation is a little different from the one counsel makes; in other words, it seems to us maybe we should consider the testimony Your Honor heard before, but the problem still is before Your Honor as to the permanent orders *considering the parties' condition at this time. My understanding of the rule is that it is the condition of the parties at this time with respect to a property division and with respect to alimony and support money, which is the basis for the Court's decision.*

"The Court: I agree upon that, except I think the assumption would be the first order was probably correct, and if there is any change in the figures the Court would—

"Mr. Howard: Is it Your Honor's ruling the burden is upon the defendant to show a change of circumstances and therefore he has the opening and closing?

"The Court: On the question of alimony and support, yes." (Italics ours)

Defendant was called as a witness by plaintiff's counsel and testified that in September, 1953, he had purchased a home for the sum of $21,250.00 upon which he had made a down payment of $8,000.00, giving a note secured by deed of trust for the unpaid balance; that he had expended thereon a few hundred dollars in improvements and equipment; that his only income was from the "Brown Trust" and a small sum received from manufacturing toys in the basement of his house, and that he was unemployed although he sought employment. Being interrogated with reference to certain financial transactions, defendant admitted that during the year 1953 he has received the sum of $24,311.00, of which amount he had but $3,005.00 remaining in the bank on deposit by court order. He ac-

counted for his expenditures as follows: $1,666.00 paid by order of court on plaintiff's past due bills; balance of federal income tax for 1952 $1,125.00; life insurance premiums paid by order of court $1,495.00; state income tax $134.00; $8,000.00 down payment on residence, and $6,000.00 in alimony and support money, making a total expenditure of $18,420.00, which, together with the $3,005.00 kept on deposit by court order, leaves defendant $2,886.00 for his personal expenditures during the time for which he accounted for the grand total of $24,311.00.

Defendant also testified that subsequent to the entry of the interlocutory decree the automobile agency in which he had invested $65,000.00 was in financial difficulties and that its assets were of doubtful value; that he had a liability on a continuing guaranty for the company's indebtedness at one of the Denver banks, amounting to $33,333.33, and that he stood ready to transfer all of his stock in the automobile agency to anyone who would relieve him of his liability under the continuing guaranty. He also testified that in addition to the assets hereinabove mentioned he had photographic and hunting equipment worth a few hundred dollars.

Plaintiff testified that she had kept records of her actual expenditures for household purposes subsequent to the hearing on April 14, 1953, and for a period of eight months the total of said expenses was $6,135.45 or an average monthly expenditure of $766.93. She also testified that she had on deposit in Denver banks in savings and checking accounts the sum of $6,023.68. A month or two prior to the hearing on December 14, 1953, plaintiff inherited property consisting of bonds and insurance and an interest in real estate in Savannah, Georgia from her father's estate. The stocks had a market value of $77,681.00 on December 9, 1953, and the annual income therefrom was $4,613.05. The value of the assets of the estate is listed as $29,771.65, of which plaintiff is entitled to one-half. Plaintiff has, or will, receive $3,000.00 as a beneficiary in insurance policies on her father's life, and will be entitled

to a one-fifteenth interest in a residence in Savanaah, Georgia, together with the contents of the house. She owns a 1951 Chrysler station wagon, and is responsible for one-half of the burial and funeral expenses incurred in connection with her father's death.

In the record of the hearing on December 14, 1953, there is not a scintilla of evidence to indicate that the $350.00 per month allocated in the interlocutory decree for the support and maintenance of the children is inadequate for their immediate needs. Plaintiff made no attempt whatever to apportion the $766.93 average monthly household expenses incurred in the eight months period to December 14, 1953, between the children and herself.

At the conclusion of all of the evidence the following occurred:

"The Court: My thought would be to award the income from the Aspen Block to the children, award the residence (677 Gilpin Street) to the wife, and the furniture therein, with the exception of the items which, by stipulation, we agreed should go to Mr. Brown. * * *

* * *

"The Court: Then award the — order out of the escrow agreement the plumbing and electrical bill be paid [$1,500.00], and that the attorney fees on both sides of the case, and the court costs, be paid out of the escrow agreement, divide the Six Hundred Dollars in government bonds, and deny any permanent alimony. That is the attorney fees for the entire litigation on both sides.

* * *

"Mr. Doyle: This matter of insurance, Your Honor—

"The Court: I think he should keep up the insurance.

"Mr. Howard: How is he going to do it—Twelve Hundred Dollars a year, Fifteen Hundred Dollars?

"The Court: Maybe we better order the first year's insurance — let's order for one year from now the insurance paid out of that escrow agreement, and that will give us a chance to see if he gets a job or not. The only thing I want left open is the right to petition the court for addi-

tional child support, if necessary, based upon any salary he may get which is a substantial salary.

\* \* \*

"Mr. Doyle: Do I understand the Court wants an order directing the trustee of the Aspen Block to pay all the income of that property for the support of the four minor children?

"The Court: Whichever way you want—we can set up a trustee for the children. If we set up a bank, we have the expense. If you people can trust each other and make her trustee for the children, it doesn't necessarily mean it has to be spent as support, but the income comes for the children.

"Mr. Howard: Will she account for the expenditures on account of the children; in other words, that is a rather substantial income, Eighty-five Hundred Dollars.

"The Court: What I had in mind, if it is out and out as a trust, then if the children didn't use it, take it out of the trust and put it in a bank account. But as they get older their expenses become greater, and in effect I wanted them to have, as of now, the income of that trust and have it come along. It may be they don't spend it all right now, but after they are fifteen or sixteen or seventeen or eighteen years old they will spend it.

\* \* \*

"The Court: Maybe you want a decree in there making her trustee, but they are getting a little more than they may use now. Their needs will be more when they are older."

There then arose some discussion concerning the income tax question:

"Mr. Doyle: I assumed the Court awarded that [$8,500.00 per year income] as support for the children, and that the Court intended to charge the interest of the defendant in this Aspen Block as security for payment of this amount. \* \* \*

"The Court: My thought was that this would be money for the children, but perhaps they wouldn't need all of it

at the present time but as they grow older they probably would, and in effect it was like giving them a beneficial interest in the Trust, * * *

\* \* \*

"Mr. Doyle: I will be very frank with the Court. In the event Mr. Brown — my opinion was if it were awarded as property it would still be payable to the children notwithstanding that [income tax matters]. I will be honest with you; I have considered it from that standpoint, and I think that is the result if it is awarded as to the property —that is, it will continue until age twenty-one.

"Mr. Howard: I am quite frank to say, Your Honor, there are two things I don't know about—that is, one, whether or not Your Honor has authority to award property to children. I don't know about that. If you have that power and authority, then I am not entirely clear about the tax. It seems as though that income would be theirs and they would pay the tax on it as though they were beneficiaries of the Trust.

"The Court: Didn't I say the other night 'Well, in effect, what I am doing is attempting to create a Trust for the children, but if you have a bank or some administrator, it is always a good idea, but you also have the expense.' "

The final decree awarding property and support money was entered February 16, 1954, and therein it was adjudged:

1. The custody of the children be awarded to the plaintiff with defendant's right of reasonable visitation;

2. The residence of the parties at 677 Gilpin St., together with all furnishings therein, with certain agreed exceptions, was awarded to the plaintiff, and defendant was ordered to execute a quit claim deed conveying the real estate to plaintiff.

3. The United States Government bonds were divided equally between the parties.

4. Speed Wrap stock was awarded to defendant.

5. (a) Each of the attorneys for plaintiff and defend-

ant were awarded $2,000.00 to be paid out of the escrow fund.

(b) Certain accounts, amounting to $1,599.75, for repairs on the residence at 677 Gilpin St.

(c) $346.13 for 1953 taxes on the residence at 677 Gilpin St.

(d) The premium on one of defendant's life insurance policies which accrues on April 20, 1954, amounting to $450.00.

6. Plaintiff is awarded the income from the Aspen Block Trust in the amount of Eighty-five Hundred Fifty Dollars ($8,550.00) per year, as trustee, for the support of the minor children of the parties. The Defendant shall execute such instruments and directions as are necessary to carry out this award. The Plaintiff shall hold the income in trust to support the minor children of the parties, and shall keep detailed records of her expenditures, and if the full amount of this award is not needed in any particular year Plaintiff shall deposit any surplus in a savings bank for use in future years. Defendant is hereby enjoined from pledging, mortgaging, selling or disposing of the property which is held in the Aspen Block Trust and is described [legal description] and this order shall constitute a charge against the income from this trust.

7. Plaintiff shall repay the sum of $750.00 at the rate of $100.00 per month.

8. Permanent alimony denied.

9. Defendant ordered not to change the beneficiary in his $55,000.00 insurance program.

Plaintiff's only objection to the decree of December 14, 1953, is the court's refusal to allow additional counsel fees.

Our lengthy and detailed statement of the financial condition of the parties at the time of the entry of the interlocutory and final decrees awarding property and support money should be borne in mind as well as our statement as to the needs of plaintiff and her children as disclosed by the record.

In defendant's motion for a new trial two questions are presented: 1. The sufficiency of the evidence to warrant the court in making its award for the support and maintenance of the minor children is questioned, and, 2. The jurisdiction of the trial court with reference to defendant's trust fund and the creation of a trust for the support of the children is challenged. These matters will be considered in that order.

 1. The court had before it defendant's financial condition at the time of the hearing on April 16, 1953, for temporary allowances to the wife as alimony and allowances to her for the support and maintenance of the children, and when these questions were presented for determination at the time of the entry of the final decree awarding property and support money, the court stated specifically that it had in mind the evidence theretofore presented, and that it would assume that the orders made in the interlocutory decree were fair, just and adequate. The court also stated that if there was to be any modification of the decretal orders by lessening the allowances, the burden would be upon defendant, and conversely held that if the allowances contained in the interlocutory decree were inadequate, the burden of establishing that fact would be upon plaintiff. At the hearing on December 14, 1953, it should be remembered, the financial condition of defendant was materially worsened by the loss of $500.00 per month salary, and the financial condition of plaintiff materially changed by a substantial inheritance. It also should be remembered that plaintiff testified that she had kept an accurate account of her household expenses for eight months immediately preceding the hearing, and that the same averaged $766.93 per month. There was no evidence offered from which the court could determine what portion of this $766.93 per month expenditure was attributable to the care of the children and how much thereof was expended for plaintiff's individual expenses. It also should be remembered that plaintiff was denied any permanent alimony, although she had theretofore

been awarded $400.00 per month, and by the property division she was awarded title to a residence which had recently been acquired for the sum of $21,250.00, and upon which extensive repairs had been made and paid for. The court having correctly stated that in making its orders for the payment of either alimony or the support and maintenance of the children, the financial condition of the defendant at the time of the hearing was to be considered in determining the amount which should be awarded to plaintiff as permanent alimony as well as the amounts which defendant should be ordered to pay for the support, maintenance and education of his minor children. Nevertheless, without a scintilla of evidence to support the court in making the order, it ordered and decreed that plaintiff was to be paid an income from a trust producing $8,550.00 yearly. There is no evidence whatever from which the court could determine that the $350.00 monthly allowance given plaintiff by defendant for the support of the children was inadequate; consequently there was no justification for the court more than doubling its previous award for such purpose. Furthermore, the court indicated that a portion of the $8,550.00 could be saved for future needs of the children; those needs can properly be considered when they arise and are brought before the court. The allowance of the total income from the trust fund was unwarranted, wholly unauthorized, and was an abuse of discretion. Under the evidence presented, the court's order pauperized defendant.

2. The statute under which the objectionable orders were made is as follows:

"At all times after the filing of a complaint in an action for divorce, the court in term time, or the judge thereof in vacation, may make such order for the care and custody of the minor children of the parties as the circumstances of the case may warrant, and such court or judge may grant alimony and counsel fees pendente lite to the wife. When a divorce has been granted the court may make such order and decree providing for the payment

of alimony and maintenance of the wife and minor children or either of them as may be reasonable and just *and may require security to be given for the payment of such alimony, or enforce the payment thereof by execution or imprisonment, or may decree a division of property."* (Italics ours) C.R.S. '53, 46-1-5.

In the italicized portion of the section giving the court authority to provide for alimony "or may decree a division of property," the conjunction "or" therein should be considered synonymous with "and." *Shapiro v. Shapiro,* 115 Colo. 505, 176 P. (2d) 363. We also have held that in a divorce action, particularly with respect to the care, custody and maintenance of minor children, the court, at the time of making an award for the minor children, is obligated to appraise conditions as they exist at the time of the presentation. *Gourley v. Gourley,* 101 Colo. 430, 73 P. (2d) 1375. It always has been recognized in this jurisdiction that if the financial ability of the husband and father improves, and the needs of the minor children increase, the jurisdiction of the court to make additional orders for the care and maintenance of the minor children may be invoked at any time in a proper proceeding.

In our study of 46-1-5, supra, we find that the legislature authorized a court to require security for the payment of alimony. At the same time we are apprised by this section that the court may make an order for the care and custody of minor children; may make provision for their maintenance; and this in the same decree making an award for alimony. The phraseology of the section justifies a construction that the legislature had in mind that court orders for the payment of the wife's alimony could only be enforced when jurisdiction of the husband was lawfully acquired. It is obvious that if the order for the payment of alimony was unheeded by a husband, who had left the State of Colorado without leaving property therein, the only recourse available to the wife in the collection of alimony would be to pursue the husband into the state of his residence and there maintain a separate

action based on the judgment of our state court. It is apparent that it was the legislative intent to require security for the payment of awarded alimony and thus obviate the necessity of the wife pursuing the delinquent husband. We are fortified in thus limiting the court's authority to require security for the payment of alimony by reason of the fact that with respect to orders for the payment of sums required for the support and maintenance and education of the minor children of the parties, the legislature has wisely enacted a statute which makes it a felony for a husband to neglect, fail or refuse to provide reasonable support and maintenance for his minor children under the age of sixteen years. A father who thus neglects to discharge his natural, as well as his statutory, duty to his children "shall be deemed guilty of a felony," and may be imprisoned for so doing unless he provides a bond conditioned upon the support of such children. C.R.S. '53, 43-1-1.

It should be remembered that defendant was a beneficiary under the Aspen Block Trust which yielded an income of $8,550.00 per year, and that the court expressed doubt that this entire amount would be necessary for the care, support and maintenance and education of the minor children, but suggested that plaintiff, as a substituted trustee, should keep an accurate account of her expenditures from the transferred trust and deposit any balance in a savings account so that the future increased cost of care and maintenance of the children would thus be provided. The court's order with reference to the Aspen Block Trust reads:

"Plaintiff is awarded the income from the Aspen Block Trust in the amount of Eighty-five Hundred Fifty Dollars ($8,550.00) per year, as trustee, for the support of the minor children of the parties. The Defendant shall execute such instruments and directions as are necessary to carry out this award. The Plaintiff shall hold the income in trust to support the minor children of the parties, and shall keep detailed records of her expenditures, and if the

full amount of this award is not needed in any particular year Plaintiff shall deposit any surplus in a savings bank for use in future years. Defendant is hereby enjoined from pledging, mortgaging, selling or disposing of the property which is held in the Aspen Block Trust and is described as follows * * * and this order shall constitute a charge against the income from this trust."

This action of the trial court, plaintiff's counsel seek to substantiate and support by our decisions in *Urling v. Urling,* 107 Colo. 186, 109 P. (2d) 1060, and *Hall v. Hall,* 105 Colo. 227, 97 P. (2d) 415.

In *Urling v. Urling, supra,* the trial court ordered defendant to establish a trust fund to secure payments for the support of a minor child and alimony to his divorced wife. There it was the plaintiff who was to be benefited by that trust, and it was she who questioned the trial court's authority to order the creation of the trust. Defendant in nowise complained thereof. In the present case the converse is true, and it well may be said that in *Urling v. Urling, supra,* the question as to the court's authority to order the creation of the trust was actually not in question, and, consequently, the decision of the court therein is not helpful.

In *Hall v. Hall, supra,* the trust agreement in question was entered into between the parties as a property settlement prior to the granting of the interlocutory decree, and it was the defendant who sought a cancellation of the property settlement. The syllabus, which is supported by the opinion, reads:

"Where parties to a divorce action enter into an agreement settling their property rights, which agreement is incorporated in the final decree, the court is thereafter without jurisdiction—no fraud in procuring the settlement appearing—to modify the terms of the decree concerning such property rights in the absence of consent of the parties."

"Where there is a self-operative trust agreement between the parties to a divorce action in settlement of their

property rights, such agreement is binding upon the parties, and the court is without jurisdiction to set it aside, no showing of fraud, duress or mistake appearing."

The decisions in *Urling v. Urling, supra,* and *Hall v. Hall, supra,* are not helpful in the determination of the question presented in the instant case.

Security, as that word is used in C.R.S. '53, 46-1-5, may be said to be that which is given or pledged to make secure or certain the fulfillment of an obligation.

■ Assuming that under the provisions of our statute a court is authorized to require security for the payment of allowances for the maintenance of minor children, the order of which complaint is made in the instant case is not security but confiscation.

We, therefore, conclude that under the evidence presented in this case the trial court had no jurisdiction to create a trust for the support of the minor children, nor was it authorized under the statutory provisions to require defendant to give security for their future support. In so doing, error was committed.

■ Plaintiff maintains that her counsel are entitled to additional allowances for services rendered in connection with this litigation. It should be remembered that the trial court awarded both counsel for plaintiff and defendant the sum of $3,500.00 each for services in connection with this litigation. The trial court refused to increase the allowance for plaintiff's attorneys. Under the financial condition of the parties involved, we believe it improper to require defendant to pay additional fees to plaintiff's counsel; accordingly we approve the trial court's refusal so to do.

The judgment is reversed and the cause remanded with directions to set aside that portion of the final decree awarding property and support money entered by the district court in which defendant was ordered to execute such instruments and directions as were necessary to carry out the provisions of the decree awarding plaintiff as trustee the income from the Aspen Block Trust in the

amount of $8,550.00 a year for the support of the minor children of the parties; also that portion of the decree enjoining the defendant from pledging, mortgaging, selling or disposing of the property held in the Aspen Block Trust.

The order contained in the interlocutory decree, commanding defendant to pay the sum of $350.00 per month for the support of the minor children is ordered reinstated and shall constitute the only payment which defendant will be obliged to make unless and until the trial court acquires jurisdiction to modify that order.

Each party is to bear his or her costs incurred in the proceeding in this court.

MR. JUSTICE LINDSLEY does not participate.